UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMALL S. BAKER,

               Plaintiff,

    v.

MELVIN HOPKINS, *et al.*,

               Defendants.

CASE NO. 2:21-cv-00361-MJP-JRC

REPORT AND RECOMMENDATION

NOTED FOR: November 26, 2021

This 42 U.S.C. § 1983 civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4.

Before this Court are the following motions: (1) the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) of defendants Camden Crouse, Melvin Hopkins, Joan Jaeger, Wallace LaFleur, Sonia Mills, Tammy O'Reilly, James Palmer, Christine Pratt, Lori Schneider, Jeremy Seely, and Melinda Tuggle ("moving defendants"); (2) plaintiff's motion for a preliminary injunction and temporary restraining order ("motion for preliminary injunction"); (3)

1   plaintiff's motion to file a third amended complaint ("motion to amend"); and (4) plaintiff's

2   motion to attach additional exhibits to his proposed third amended complaint ("TAC"). Dkts. 22,

3   48, 52, 57.

4        In the TAC, plaintiff alleges that defendants fired him from his job, stole his books, broke

5   his typewriter, and interfered with his communications with counsel. Defendants allegedly took

6   these actions to retaliate against plaintiff for filing a civil rights lawsuit and grieving the

7   conditions of his confinement. Plaintiff's allegations plausibly allege that certain defendants

8   committed these actions. Also, plaintiff's allegations plausibly allege that those actions were

9   sufficiently adverse to dissuade an ordinary person from complaining about the conditions of his

10  confinement. Therefore, contrary to defendants' contention, plaintiff has stated a facially

11  plausible retaliation claim against certain defendants. So it is proper for plaintiff to file his TAC.

12  Because it is proper for plaintiff to file the TAC, defendants' motion to dismiss plaintiff's second

13  amended complaint ("SAC") is moot.

14       Plaintiff also seeks a preliminary injunction and a temporary restraining order ("TRO")

15  based on allegations similar to the TAC's, along with the new allegation that defendants failed to

16  provide him with adequate medical care. However, the adverse actions that plaintiff alleges

17  occurred at discrete times in the past and are compensable through an award of damages. So

18  plaintiff has not shown a basis for a preliminary injunction or TRO.

19       Finally, plaintiff asks this Court to allow him to file additional exhibits to support his

20  TAC. But some of the proposed additional exhibits bear the same number as exhibits that are

21  already in the record. Thus, allowing plaintiff to submit the additional exhibits as numbered and

22  identified would create a disordered record. Furthermore, because plaintiff's TAC should

23  proceed in part, disallowing him from filing the additional exhibits now will not unfairly

24

prejudice him. Accordingly, plaintiff's motion to file additional exhibits should be denied without prejudice.

## BACKGROUND

### I.    Procedural Overview

Plaintiff filed his initial complaint on March 17, 2021. Dkt. 1-1 at 11. Plaintiff paid the $402 filing fee. On July 14, 2021, plaintiff filed an amended complaint. Dkt. 14. On August 5, 2021, plaintiff filed his motion for preliminary injunction. Dkt. 22.

On September 1, 2021, plaintiff filed his SAC. Dkt. 42. On September 15, 2021, the moving defendants filed their motion to dismiss. Dkt. 48.

This Court ordered service of process for defendants Harris, Grey, McLean, and Watanabe ("nonmoving defendants") shortly before the moving defendants filed their motion to dismiss. *See* Dkts. 45, 47–48. In their motion to dismiss, the moving defendants contend that, because the nonmoving defendants were unrepresented at that time, they did not join in the motion. Dkt. 48 at 1 n.1. On October 13, 2021, counsel entered an appearance on behalf of defendants Grey and Harris. Dkt. 59. As of the issuance of this report, counsel has not entered an appearance on behalf of defendants McLean and Watanabe, and there is no indication that these two defendants have waived service or been served. Still, this Court must dismiss any claim against the nonmoving defendants that is frivolous, malicious, or fails to state a claim, or that seeks monetary relief from an immune defendant. *See* 28 U.S.C. § 1915A(b).

Plaintiff did not contest the motion to dismiss. Rather, on September 29, 2021, plaintiff filed his motion to amend and a proposed TAC. Dkts. 52–53. On October 4, 2021, defendants responded to the motion for preliminary injunction. Dkt. 56. On October 11, 2021, defendants responded to the motion to amend. Dkt. 58. Defendants contend that the motion to amend should

1  be denied because plaintiff failed to state a viable § 1983 claim in the TAC and, hence, it is

2  futile. *See id.*

3      Meanwhile, on October 7, 2021, plaintiff filed his motion to attach additional exhibits to

4  the proposed TAC. Dkt. 57. On October 14, 2021, plaintiff replied to defendants' response to his

5  motion to amend. Dkt. 61.

6      Because plaintiff did not contest the motion to dismiss the SAC, the key issue is whether

7  plaintiff has stated any viable § 1983 claims in the TAC. If so, he should be allowed to file the

8  TAC, which would moot the motion to dismiss the SAC, *see S*chucker v. Rockwood, 846 F.2d

9  1202, 1203–04 (9th Cir. 1988) (per curiam).

10      Furthermore, this Court must screen the TAC under § 1915A(b), whose standard for

11  determining whether a plaintiff has failed to state a claim is the same as Rule 12(b)(6)'s standard

12  for failure to state a claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). So allowing

13  plaintiff to file the TAC and denying as moot the motion to dismiss will not unfairly prejudice

14  defendants.

15  **II.    TAC's Factual Allegations**

16      The following allegations come from the proposed TAC. Dkt. 53. Unless otherwise

17  noted, this Court assumes their truth to screen the TAC under § 1915A. *See Lopez v. Smith*, 203

18  F.3d 1122, 1126 n.6 (9th Cir. 2000) (en banc) (the Prison Litigation Reform Act's screening

19  provisions apply "even if a 12(b)(6) motion is made").

20      Plaintiff is incarcerated at Monroe Correctional Complex–Special Offender's Unit

21  ("MCC"). Dkt. 53 at 2. Plaintiff has sued: (1) Melvin Hopkins, a correctional sergeant at MCC;

22  (2) James Palmer, a correctional sergeant at MCC; (3) Tammy O'Reilly, a correctional officer in

23  MCC's mailroom; (4) Melinda Tuggle, an employee in MCC's mailroom; (5) Lori Schneider, an

24

1  employee in MCC's mailroom; (6) Wallace LaFleur, an employee in MCC's mailroom; (7)

2  Jeremy Seely, a correctional officer in MCC's Special Offender Unit ("SOU"); (8) Douglas

3  McLean, a correctional officer at MCC; (9) Kathryn Grey, a former correctional mental health

4  unit supervisor at MCC; (10) Christine Pratt, a mental health counselor at MCC; (11) Sonia

5  Mills, a former classification counselor at MCC; (12) Camden Crouse, a classification counselor

6  at MCC; (13) Joan Jaeger; (14) Lily Harris, an employee of "Correctional Industries," which

7  contracts with the DOC to provide food services to prisoners in DOC custody; and (15) Alex

8  Watanabe, a grievance coordinator at MCC. *See id.* at 2–5, 12. Plaintiff sues each defendant in

9  his or her individual and official capacity. *See id.* at 2–5.

10      Plaintiff alleges that, on June 25, 2018, defendant Harris "wrote a false infraction against

11  plaintiff." *Id.* at 5. As a result, defendant Grey allegedly told plaintiff that he was terminated

12  from his position in the prisoner kitchen. *See id.* at 6. According to plaintiff, nondefendant

13  Officer Sutherland told him that Sutherland knew that plaintiff was "fired because [he was] suing

14  everybody." *Id.* At that time, plaintiff was litigating against DOC employees. *Id.*

15      On December 13, 2018 and November 16, 2019, defendant O'Reilly and/or defendant

16  Tuggle allegedly opened plaintiff's "legal mail" without plaintiff being present. *Id.* at 6.

17      According to plaintiff, on July 25, 2019 and October 28, 2019, defendant Mills was

18  present when plaintiff discussed his civil rights case with counsel. *See id.* at 7, 82. Likewise, on

19  December 12, 2019, defendants Crouse and Pratt allegedly were present while plaintiff discussed

20  his civil case with counsel. *See id*. at 7. Defendant Grey allegedly instructed defendants Mills,

21  Crouse, and Pratt to be present at these meetings to "impede on plaintiff's ability to consult with

22  counsel." *Id.* at 8.

23

24

1    Plaintiff alleges that, in January 2020, defendant McLean intentionally broke his

2    typewriter. *See id.* at 8, 11. Plaintiff further alleges that, between January 2020 and May 2020,

3    his typewriter was intentionally broken two more times. *See id.* at 8–9. Plaintiff adds that he had

4    to buy a new typewriter "to participate in college courses and litigation." *Id.* at 9.

5    In January or February 2020, defendant Grey told plaintiff that "he was harassed because

6    he was not liked by staff because he wrote grievances and sued staff." *Id.* "Defendant Grey then

7    told plaintiff to stop writing grievances." *Id.*

8    "As early as April 2017 Defendant Seely [] refused to allow plaintiff to process his legal

9    mail according to DOC Mail Policy 450.100 and interfered with and/or censored plaintiff's

10   outgoing legal mail." *Id.* at 10. Plaintiff adds that, on June 21, 2020, defendant Seely allegedly

11   refused to allow plaintiff to seal his outgoing "legal mail" in accordance with "DOC Mail Policy

12   450.100." *See id.* at 10.

13   On September 15, 2020, plaintiff allegedly received mail that unspecified mailroom

14   employees "vandalized." *Id.*

15   According to plaintiff, on February 25, 2020, two books he purchased were delivered to

16   the mailroom. *Id.* Allegedly, unidentified mailroom employees stole the books. *Id.* Plaintiff

17   further alleges that he did not receive books that he had purchased within five days of their

18   delivery as DOC regulations require. *Id.* at 10–11. Plaintiff adds that defendant McLean had the

19   opportunity to steal and/or delay the delivery of the books he purchased. *See id.* at 11.

20   Plaintiff alleges that defendant Jaeger told him that the mailroom employees did not like

21   him because he wrote grievances and sued staff members. *Id.* at 12.

22

23

24

1       On July 30, 2020, defendant Watanabe wrote an infraction report falsely accusing

2    plaintiff of exceeding "the amount of grievances allowed in a one week period." *Id.* After the

3    infraction hearing, defendant Grey told plaintiff to stop writing grievances." *Id.*

4       Based on these allegations, plaintiff alleges that defendants retaliated against him in

5    violation of the First Amendment and conspired with each other to retaliate against him. *Id.* at

6    15–18. Plaintiff seeks damages, declaratory relief, and injunctive relief. *Id.* at 18–19.

7                                    **STANDARD OF REVIEW**

8       Under the Prison Litigation Reform Act ("the PLRA"), this Court is required to screen

9    complaints brought by prisoners seeking relief against a governmental entity or officer or

10   employee of a governmental entity. 28 U.S.C. § 1915A(a); *O'Neal v. Price*, 531 F.3d 1146, 1152

11   (9th Cir. 2008). This Court must "dismiss the complaint, or any portion of the complaint, if the

12   complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;

13   or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §

14   1915A(b).

15      The standard for determining whether a plaintiff has failed to state a claim under §

16   1915A(b)(1) is the same as Rule 12(b)(6)'s standard for failure to state a claim. *Wilhelm*, 680

17   F.3d at 1121. So, under § 1915A(b)(1), the court may dismiss a complaint that fails "to state a

18   claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

19   (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

20   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

21   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Moss v. U.S. Secret Serv.*,

22   572 F.3d 962, 969 (9th Cir. 2009) ("[T]o survive a motion to dismiss, the non-conclusory factual

23

24

1  content, and reasonable inferences from that content, must be plausibly suggestive of a claim

2  entitling the plaintiff to relief." (citation and internal quotation marks omitted)).

3      While this Court must accept all the allegations contained in the complaint as true, this

4  Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* (citation

5  omitted). When a plaintiff is proceeding *pro se*, his allegations must be viewed under a less

6  stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner*, 404

7  U.S. 519, 520 (1972). However, while the court can liberally construe a plaintiff's complaint, it

8  cannot supply an essential fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471

9  (9th Cir. 1992) (citation omitted).

10      To state a claim under § 1983, a plaintiff must show that: (1) he suffered a violation of

11  rights protected by the Constitution or created by federal statute, and (2) the violation was

12  proximately caused by a state actor. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991)

13  (citation omitted). The first step in a § 1983 claim is therefore to identify the specific

14  constitutional right allegedly infringed. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017)

15  (citation omitted).

16  **MOTION TO AMEND**

17      A court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P.

18  15(a)(2). Generally, justice requires leave to amend where, as here, "the deficiencies of the

19  complaint could [] be cured by amendment." *See Schucker*, 846 F.2d at 1203–04. So this Court

20  considers whether plaintiff has stated any viable § 1983 claims in the TAC.

21  **I.**     **Eleventh Amendment Immunity**

22      In his TAC, plaintiff sues defendants in their individual and official capacities and seeks

23  damages. Dkt. 53 at 2–5, 18–19. "State officers in their official capacities, like States themselves,

24

1  are not amenable to suit for damages under § 1983." *Arizonans for Off. Eng. v. Arizona*, 520 U.S.

2  43, 69 n.24 (1997) (citation omitted); *Pena v. Gardner*, 976 F.2d 469, 471–72 (9th Cir. 1992)

3  (per curiam) (Eleventh Amendment bars damages claims against DOC "officials in their official

4  capacities"). Therefore, plaintiff's official-capacity damages claims against defendants are not

5  viable.

6  **II.    Personal Involvement**

7          To state a claim under § 1983, a "plaintiff must plead that each Government-official

8  defendant, through the official's own individual actions, has violated the Constitution." *See*

9  *Iqbal*, 556 U.S. at 676; *see also Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person

10 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if

11 he does an affirmative act, participates in another's affirmative acts, or omits to perform an act

12 which he [or she] is legally required to do that causes the deprivation of which complaint is made."

13 (citation omitted)).  In other words, plaintiff must allege a defendant's personal involvement in

14 violating plaintiff's civil right(s).

15         Here, plaintiff has not adequately alleged that defendants Hopkins and Palmer were

16 personally involved in the alleged retaliation. Plaintiff alleges that Hopkins and Palmer supervised

17 MCC mailroom employees and failed to "remedy the [alleged] retaliation despite "being informed"

18 of the same. *See* Dkt. 53 at 2–3, 13. However, these allegations are conclusory. *See id.* Plaintiff

19 does not describe the circumstances in which Hopkins and Palmer allegedly learned of the alleged

20 retaliation and failed to remedy it. Rather, plaintiff seeks to make defendants Hopkins and Palmer

21 liable for MCC mailroom employees' alleged retaliation simply because the former supervised the

22 latter. But there is no vicarious liability under § 1983. *Iqbal*, 556 U.S. at 676. So plaintiff has

23 failed to state a viable § 1983 claim against Hopkins and Palmer.

24

Plaintiff's retaliations claim against Hopkins and Palmer should be dismissed without leave to amend. Plaintiff has now filed four complaints. It is clear that any "further amendment" with respect to this claim "would be futile." *See* Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987).

## III.    First Amendment—Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (citations omitted).

The First Amendment protects a prisoner's right "to file prison grievances," and to "pursue civil rights litigation in the courts." *Id.* at 567 (citations and internal quotation marks omitted). Adverse action has a chilling effect on the prisoner's First Amendment rights if the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "A plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm that is more than minimal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration adopted) (citations and internal quotation marks omitted).

Regarding causation, "the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* "Direct evidence of retaliatory intent" or "a chronology of events from which retaliation can be inferred" may demonstrate the requisite causal connection. *See id.* (citations omitted).

1        A.    Mailroom Employees (Defendants O'Reilly, Tuggle, Schneider, and LaFleur)

2        Plaintiff alleges that, on December 13, 2018 and November 16, 2019, defendant O'Reilly

3   and/or defendant Tuggle opened plaintiff's "legal mail" without plaintiff being present. *Id.* at 6.

4   Furthermore, plaintiff alleges that, on September 15, 2020, the mailroom employees

5   "vandalized" his "legal mail." *Id.* at 10. Additionally, plaintiff alleges that, around February 25,

6   2020, defendant McLean and/or mailroom employees stole his books and/or delayed delivery of

7   books he purchased. *See id.* at 10–12. Allegedly, plaintiff knows that the mailroom employees

8   committed these acts because: (1) defendant Jaeger told him that the mailroom employees did

9   not like him because of his grievance and litigation activity; and (2) "Jaeger's statement was

10  inclusive to all mailroom staff." *See id.* at 12, 14.

11       Here, liberally construing the TAC, plaintiff has adequately alleged that defendants

12  O'Reilly, Tuggle, Schneider, and LaFleur retaliated against him. Plaintiff alleges that, because of

13  his protected activity, these defendants stole his books. Furthermore, plaintiff alleges that, on

14  December 13, 2018 and November 16, 2019, defendant O'Reilly and/or defendant Tuggle

15  opened his "legal mail" without his being present. Dkt. 53 at 6. This Court can reasonably infer

16  that the alleged November 16, 2019 incident involved mail from counsel in plaintiff's civil case.

17  *See id.*; Dkt. 42 at 9; *see also Baker v. Grant*, Case No. 2:17-cv-01678-RSL (W.D. Wash. 2017),

18  Dkts. 107, 119 (showing that counsel represented plaintiff from June 2019 to December 2019);

19  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.

20  1992) (federal courts "may take notice of proceedings in other courts, both within and without

21  the federal judicial system, if those proceedings have a direct relation to matters at issue"

22  (collecting cases)).

23

24

1    True, plaintiff does not specify which mailroom employee(s) allegedly stole his books.

2    However, plaintiff may make alternative statements at the pleading stage. *See* Fed. R. Civ. P.

3    8(d)(2). Furthermore, it is reasonable to infer that stealing books a prisoner had purchased would

4    dissuade a reasonably firm person from complaining about his prison conditions. *See Rhodes*,

5    408 F.3d at 568. Likewise, at this stage, it is reasonable to infer that opening a prisoner's legal

6    mail would do the same. *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208–11 (9th Cir. 2017)

7    (prisoners have a First Amendment right to be present when their mail from counsel in a civil

8    case is opened). Additionally, plaintiff essentially alleges that defendant Jaeger told him that she

9    knew that the mailroom employees were retaliating against him for his protected activity. Thus,

10   he has adequately alleged a causal connection between his protected activity and the adverse

11   actions described above. In sum, plaintiff has stated a facially plausible retaliation claim against

12   defendants O'Reilly, Tuggle, Schneider, and LaFleur.

13       B.    Defendant Seely

14       According to plaintiff, "[a]s early as April 2017 Defendant Seely [] refused to allow

15   plaintiff to process his legal mail according to DOC Mail Policy 450.100 and interfered with

16   and/or censored plaintiff's outgoing legal mail." Dkt. 53 at 10. Plaintiff adds that, on June 21,

17   2020, defendant Seely disallowed plaintiff to seal his outgoing "legal mail" in accordance with

18   "DOC Mail Policy 450.100." *See id.*

19       Here, plaintiff has failed to state a facially plausible retaliation claim against defendant

20   Seely. Plaintiff's allegations that defendant Seely interfered with his "legal mail" lack factual

21   support. Because these allegations are conclusory, they do not support a reasonable inference

22   that defendant Seely's read, versus merely inspected, plaintiff's "legal mail." Plaintiff's

23   supporting declaration supports this finding. Dkt. 53 at 60. In it, the declarant states that he

24

1  observed plaintiff ask defendant Seely if plaintiff could seal the envelope and that defendant

2  Seely denied his request. The declaration impels the inference that plaintiff was present when

3  defendant Seely refused to let him seal the envelope and contains no facts suggesting that

4  defendant Seely read the envelope's contents. *See id*.

5        Furthermore, despite plaintiff's wholly conclusory reference to conduct starting as early

6  as 2017, plaintiff's allegations regarding defendant Seely's conduct are limited to June and

7  November 2020. *See* Dkt. 53 at 10, 60. However, as noted above, counsel represented plaintiff in

8  his civil rights case from June 2019 to December 2019. This observation further compels the

9  conclusion that defendant Seely's alleged actions did not involve mail between plaintiff and his

10 counsel. And, absent more, the allegation that defendant Seely violated DOC policy does not

11 support a reasonable inference that defendant Seely's conduct chilled plaintiff's First

12 Amendment rights or otherwise harmed him. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th

13 Cir. 2009) ("[S]tate departmental regulations do not establish a federal *constitutional* violation."

14 (citations omitted)). In short, plaintiff's conclusory allegations do not support a reasonable

15 inference that defendant Seely's alleged conduct was adequately adverse to support a retaliation

16 claim.

17       Moreover, assuming defendant Seely's actions were sufficiently adverse to support a

18 retaliation claim, plaintiff has not adequately alleged that his protected activity caused defendant

19 Seely to so act. Plaintiff provides no allegations linking these actions to his protected activity.

20       True, plaintiff alleges that all defendants retaliated against him based on the remarks of

21 defendant Jaeger, defendant Grey, and nondefendant Officer Sutherland. *See* Dkt. 53 at 18.

22 However, defendant Jaeger's remark that staff did not like plaintiff because of his protected

23 activity was limited to mailroom employees (e.g., defendants O'Reilly, Tuggle, Schneider, and

24

1  LaFleur). *See id.* at 12, 18. Officer Sutherland's similar remark was limited to the reason that

2  plaintiff lost his position in the prisoner kitchen, and plaintiff alleges that only defendants Harris

3  and Grey were involved in that decision. *See id.* at 6, 18.

4      Plaintiff also alleges that defendant Grey told him that "DOC staff" did not like him

5  because of his protected activity. *Id.* at 9. However, according to plaintiff, defendant Grey made

6  this remark during an interview about: (1) his allegations against defendants Mills, Crouse, and

7  Pratt; and (2) his allegation that someone had broken his typewriter. *See id.* Yet plaintiff's

8  relevant allegations lack factual support and, as pleaded, support a reasonable inference that only

9  defendant McLean broke his typewriter. *See id.* at 8–9, 11. Defendant Grey's isolated allegation

10  that "DOC staff" did not like plaintiff does not, without more, support a reasonable inference that

11  any defendant could have broken plaintiff's typewriter. Therefore, in the context of the TAC,

12  defendant Grey's remark was limited to defendants Mills, Crouse, Pratt, and McLean.

13      In short, there are no allegations reasonably linking defendant Seely's allegedly

14  retaliatory acts to plaintiff's protected activity. So plaintiff has failed to state a viable retaliation

15  claim against defendant Seely. This claim should be dismissed without leave to amend. *See*

16  *Rutman Wine*, 829 F.2d at 738.

17      C.      Defendant McLean

18      Plaintiff alleges that defendant McLean intentionally broke his typewriter and that he had

19  to purchase a new typewriter to take his college classes. *See* Dkt. 53 at 8–9, 11. Furthermore, his

20  allegations support a reasonable inference that defendant Grey told him that McLean took these

21  actions because of his protected activity. *See id.* at 9. Therefore, plaintiff has adequately alleged

22  that defendant McLean retaliated against him.

23

24

1      D.      Defendant Harris

2          Plaintiff alleges that, on June 25, 2018, defendant Harris "wrote a false infraction against

3   plaintiff." *Id.* at 5. As a result, defendant Grey allegedly told plaintiff that he was terminated

4   from his position in the prisoner kitchen. *See id.* at 6. According to plaintiff, nondefendant

5   Officer Sutherland told him that Sutherland knew that plaintiff was "fired because [he was] suing

6   everybody." *Id.*

7          Here, plaintiff has adequately alleged that Harris retaliated against him. It is reasonable to

8   infer that a false infraction report that costs a prisoner his job would dissuade a reasonable person

9   from complaining about prison conditions. *See* Hines v. Gomez, 108 F.3d 265, 267–68 (9th Cir.

10  1997); Mallard v. Tomlinson, 206 F. App'x 732, 737 (10th Cir. 2006) (a $0.10 cut in a prisoner's

11  wages could "chill a person of ordinary firmness' will to file future grievances"). Furthermore,

12  liberally construed, Officer Sutherland's alleged remark supports a reasonable inference that

13  defendant Harris participated in the decision to terminate plaintiff and did so because of his

14  litigation.

15      E.      Defendants Pratt, Mills, and Crouse

16         According to plaintiff, on July 25, 2019 and October 28, 2019, defendant Mills was

17  present when plaintiff discussed his civil rights case with counsel. *See* Dkt. 53 at 7, 82. Likewise,

18  on December 12, 2019, defendants Crouse and Pratt allegedly were present while plaintiff

19  discussed his civil case with counsel. *See id*. at 7. Defendant Grey allegedly instructed Mills,

20  Crouse, and Pratt to be present at these meetings to "impede on plaintiff's ability to consult with

21  counsel." *Id.* at 8.

22         Here, liberally construing the TAC, plaintiff has adequately alleged that defendants Pratt,

23  Mills, and Crouse retaliated against him. "The opportunity to communicate privately with an

24

1   attorney is an important part of [the right of access to the courts]." *Ching v. Lewis*, 895 F.2d 608,

2   609–10 (9th Cir. 1990). Furthermore, plaintiff alleges that these defendants refused his request to

3   speak with counsel in private, which supports a reasonable inference that their alleged actions

4   interfered with plaintiff's ability to communicate with counsel about his civil rights case. Dkt. 53

5   at 7. At this early stage, plaintiff's allegations support a reasonable inference that such conduct

6   would dissuade a person of ordinary firmness from complaining about his prison conditions.

7   Accordingly, plaintiff's allegations plausibly suggest that defendants Pratt, Mills, and Crouse

8   retaliated against him.

9        F.    Defendant Grey

10        Plaintiff's allegations plausibly suggest that defendant Grey retaliated against him.

11   Plaintiff alleges that, because of his protected activity, defendant Grey fired him from his job in

12   the prisoner kitchen and instructed defendants Pratt, Mills, and Crouse to interfere with his

13   communications with counsel. *See supra* Parts (D)–(E).

14        G.    Defendant Watanabe

15        On July 30, 2020, allegedly defendant Watanabe wrote an infraction report falsely

16   accusing plaintiff of exceeding "the amount of grievances allowed in a one week period." Dkt.

17   53 at 12. *Id.* After the infraction hearing, defendant Grey told plaintiff to stop writing

18   grievances." *Id.*

19        These allegations do not plausibly suggest that defendant Watanabe retaliated against

20   plaintiff. Although writing a false infraction report may constitute an adverse action, plaintiff

21   does not allege that defendant Watanabe took this action because of any protected activity.

22   Plaintiff's conclusory allegations regarding Watanabe do not support a reasonable inference

23   defendant Watanabe inappropriately participated in the infraction hearing. So there is no

24

1    reasonable basis on which to attribute to Watanabe defendant Grey's command to plaintiff to

2    stop writing grievances. This claim should be dismissed without leave to amend. *See Rutman*

3    *Wine*, 829 F.2d at 738.

4        H.    Defendant Jaeger

5        Plaintiff alleges that defendant Jaeger told him that she knew that mailroom employees

6    did not like him because of his protected activity. Dkt. 53 at 12. Furthermore, he alleges that

7    defendant Jaeger was "aware of the unconstitutional acts, failed to report them and/or took part

8    in violating plaintiff's right[s] by tampering with his legal mail[.]" *Id.* at 14. The allegation that

9    defendant Jaeger knew that the mailroom employees retaliated against plaintiff because of his

10   activity does not, absent more, support a reasonable inference that she retaliated against him.

11   Plaintiff does not allege that defendant Jaeger supervised the mailroom employees. And the SAC

12   strongly suggests otherwise because, there, he alleges that she is a nurse. Dkt. 42 at 5.

13   Furthermore, plaintiff's allegation that defendant Jaeger "tampered" with his legal mail is wholly

14   conclusory and, hence, insufficient to support a § 1983 claim. *See Iqbal*, 556 U.S. at 678. It is

15   unclear what plaintiff means by "tampered." Furthermore, the TAC impels the inference that, in

16   December 2018, defendant O'Reilly and/or defendant Tuggle opened plaintiff's mail from the

17   court, not his mail from counsel. *See* Dkt. 53 at 6, 146. So plaintiff's conclusory allegation that

18   defendant Jaeger "tampered" with his "legal mail" does not, without more, support a reasonable

19   inference that this alleged tampering involved mail from counsel. In short, plaintiff's conclusory

20   allegations regarding defendant Jaeger do not support a reasonable inference that she retaliated

21   against him. This claim should be dismissed without leave to amend. *See Rutman Wine*, 829 F.2d

22   at 738.

23

24

1    IV.    **Conspiracy**

2        Plaintiff alleges that defendants conspired with each other to retaliate against him for his

3    protected activity. *See* Dkt. 53 at 1, 18. "To establish liability for a conspiracy in a § 1983 case, a

4    plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate

5    constitutional rights." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (citation

6    and internal quotation marks omitted). "Such an agreement need not be overt, and may be

7    inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.*

8    (citation omitted). "To be liable, each participant in the conspiracy need not know the exact

9    details of the plan, but each participant must at least share the common objective of the

10    conspiracy." *Id.* (citation omitted).

11        Here, plaintiff's allegations do not plausibly suggest that defendants conspired with each

12    other to retaliate against plaintiff. Plaintiff bases his conspiracy claim on two main allegations:

13    (1) defendant Jaeger, defendant Grey, and nondefendant Officer Sutherland stated that MCC

14    employees did not like plaintiff because of his protected activity; and (2) several defendants took

15    various adverse actions against him. *See* Dkt. 53 at 15–16. As explained above, however, the

16    alleged remarks of defendant Grey, defendant Jaeger, and Officer Sutherland were limited to

17    specific defendants or incidents. *See supra* Part (B). Furthermore, although plaintiff alleges that

18    defendants took several retaliatory acts against him, the alleged fact that several defendants

19    retaliated against him does not, without more, plausibly suggest that they reached a meeting of

20    the minds to retaliate against plaintiff. The TAC contains no allegations reasonably linking these

21    discrete, temporally distant acts of retaliation to a broader plan or common purpose. Plaintiff's

22    conclusory allegation of conspiracy fail to state a facially plausible § 1983 claim. *See* Simmons

23    v. Sacramento Cty. Superior Ct., 318 F.3d 1156 (9th Cir. 2003) (citation omitted). The

24

1   conspiracy claim should be dismissed without leave to amend. *See Rutman Wine*, 829 F.2d at

2   738.

3       **V.      Conclusion**

4       Plaintiff has alleged a facially plausible individual-capacity retaliation claim against

5   defendants O'Reilly, Tuggle, Schneider, LaFleur, McLean, Harris, Pratt, Mills, Crouse, and

6   Grey, but not against defendants Hopkins, Palmer, Seely, Watanabe, and Jaeger. Plaintiff's

7   retaliation claim against these latter five defendants should be dismissed without leave to amend.

8   Furthermore, plaintiff's conspiracy claim should be dismissed without leave to amend.

9       Because the TAC is partly viable, plaintiff's motion to amend should be granted. Plaintiff

10  should be allowed to proceed on his individual-capacity retaliation claim against defendants

11  O'Reilly, Tuggle, Schneider, LaFleur, McLean, Harris, Pratt, Mills, Crouse, and Grey. Of these

12  defendants, only defendant McLean is unrepresented by counsel. If the Court allows plaintiff to

13  proceed on his individual-capacity retaliation claim as recommended, the undersigned will order

14  service on defendant McLean. The remaining claims and defendants should be dismissed.

15  Defendants' motion to dismiss should be denied as moot.

16       **MOTION FOR PRELIMINARY INJUNCTION**

17      The allegations in plaintiff's motion for preliminary injunction are similar to those in his

18  TAC, although he alleges new instances of retaliation. *See* Dkt. 22. Generally, plaintiff alleges

19  that defendants have retaliated against him "for exercising his First Amendment right to speech,

20  and petitioning the Court for redress." *Id.* at 1. Plaintiff also raises the new, unrelated allegation

21  that defendant Seely and other unidentified prison employees "refused to allow [him] to report to

22  [MCC's] diabetic medical call to receive a medically prescribed and necessary insulin shot." *Id.*

23  at 2. Allegedly, these individuals took this action in reprisal for his involvement in protected

24

1    activity. *See id.* at 2–3. Plaintiff seeks to enjoin defendants from "tampering with his mail and

2    personal property" and to require defendants to provide him "with necessary means to receive his

3    diabetic treatment." *See id.* at 5.

4           A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

5    clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*,

6    555 U.S. 7, 22 (2008). To obtain a preliminary injunction, plaintiff "must establish [1] that he is

7    likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

8    preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

9    the public interest." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (citing *Winter*,

10   555 U.S. at 20). "Where, as here, the government opposes a preliminary injunction, the third and

11   fourth factors merge into one inquiry." *Id.* (citation omitted). "The standard applicable to a

12   motion for a temporary restraining order ['TRO'] is 'substantially identical' to the preliminary

13   injunction standard." *CVS Pharmacy Inc. v. Brown*, No. C21-306 MJP, 2021 WL 977697, at *3

14   (W.D. Wash. Mar. 16, 2021) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d

15   832, 839 n.7 (9th Cir. 2001)). Thus, this Court need "not address the TRO separately." *Stuhlbarg*

16   *Int'l*, 240 F.3d at 839 n.7.

17          Here, plaintiff has not shown that he is likely to suffer irreparable harm absent a

18   preliminary injunction or TRO. Plaintiff primarily bases his retaliation claim on four types of

19   adverse actions: (1) job loss; (2) stolen books; (3) broken typewriter; and (4) interference with

20   legal mail and communications with counsel. These actions occurred at discrete times in the past

21   and could be compensated through an award of damages. True, plaintiff alleges in his motion for

22   preliminary injunction that defendant Seely, defendant Tuggle, and unspecified defendants

23   continue to retaliate against him. However, his allegations are rather conclusory. *See* Dkt. 22.

24

1    The motion notably deficient with respect to identifying which defendant is responsible for

2    which allegedly retaliatory act. *See, e.g.*, *id.* at 3 ("*Defendants* continue to tamper with the

3    plaintiff's incoming mail." (emphasis added)). Moreover, some of the allegations in plaintiff's

4    motion lack an adequate relationship with the allegations in the TAC, particularly the allegation

5    of inadequate medical care. This Court cannot grant a preliminary injunction or TRO based on

6    new, factually unrelated allegations. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,

7    810 F.3d 631, 636 (9th Cir. 2015). And because plaintiff cannot show that he is likely to suffer

8    irreparable harm absent a preliminary injunction or TRO, this Court need not address the

9    remaining prongs. *See Winter*, 555 U.S. at 23–24 (courts need not address remaining factors if

10   movant cannot establish one factor).

11       In sum, plaintiff's motion for preliminary injunction should be denied. If plaintiff

12   believes that prison officials have provided inadequate medical care in violation of the

13   constitution, he may, if he wishes, file a new, separate § 1983 action in which he attempts to

14   assert such a claim.

15                    **MOTION TO FILE ADDITIONAL EXHIBITS**

16       Plaintiff asks this Court to allow him to file additional exhibits to support his TAC. Dkt.

17   57. However, some of the proposed additional exhibits bear the same number as exhibits that are

18   already in the record. So allowing plaintiff to submit the additional exhibits as numbered and

19   identified would create a disordered record. Furthermore, plaintiff's TAC should proceed in part.

20   Therefore, disallowing him from filing the additional exhibits now will not unfairly prejudice

21   him. For these reasons, plaintiff's motion to file additional exhibits should be denied without

22   prejudice. If the parties ultimately file dispositive motions, plaintiff may submit any proper

23   exhibits he wishes to submit at that time.

24

**CONCLUSION**

Accordingly, this Court **RECOMMENDS** as follows:

1.      Plaintiff's motion to amend (Dkt. 52) should be **GRANTED**.

2.      Plaintiff should be **allowed to proceed** on the TAC's individual-capacity retaliation claim against defendants O'Reilly, Tuggle, Schneider, LaFleur, McLean, Harris, Pratt, Mills, Crouse, and Grey.

3.      Plaintiff's individual-capacity retaliation claim against defendants Hopkins, Palmer, Seely, Watanabe, and Jaeger should be **dismissed without leave to amend**.

4.      Plaintiff's official-capacity retaliation claim should be **dismissed without leave to amend**.

5.      The TAC's conspiracy claim should be **dismissed without leave to amend**.

6.      Defendants Hopkins, Palmer, Seely, Watanabe, and Jaeger should be **terminated from this case**.

7.      Plaintiff's motion for preliminary injunction (Dkt. 22) should be **denied**.

8.      Defendants' motion to dismiss (Dkt. 48)  should be **denied as moot**.

9.      Plaintiff's motion to file additional exhibits (Dkt. 57) should be **denied without prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

1    imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **November 26,**

2    **2021** as noted in the caption.

3         Dated this 5th day of November, 2021.

4

5                                        J. Richard Creatura
                                         Chief United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 23