UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMALL S. BAKER,

            Plaintiff,

v.

TAMMY O'REILLY, *et al.*,

            Defendants.

CASE NO. 2:21-cv-00361-MJP-JRC

REPORT AND RECOMMENDATION

NOTED FOR: January 6, 2023

    The matter is before the Court on referral from the District Court. Before the Court are the following motions: (1) a second motion to dismiss the claims against defendant Douglas McLean in plaintiff's fifth amended complaint and motion to sever the claims against the other defendants in this matter from those against defendant McLean; and (2) a second motion to drop or sever misjoined parties filed by defendants Tammy O'Reilly, Melinda Tuggle, Christine Pratt, Sonia Mills, Camden Crouse, Lilly Harris, and Kathryn Grey. Dkts. 129, 131.

    In the fifth amended complaint, plaintiff alleges that defendants fired him from his job, stole his books, broke his typewriter, opened his legal mail outside his presence, tampered with

REPORT AND RECOMMENDATION - 1

and delayed delivery of his mail, and interfered with his communications with counsel. Plaintiff alleges defendants took these actions to retaliate against him for grieving his conditions of confinement and filing a civil rights lawsuit against Department of Corrections ("DOC") employees. As previously found by this Court with respect to plaintiff's third amended complaint, plaintiff's allegations plausibly allege that certain defendants committed these actions. Also, plaintiff's allegations plausibly allege that those actions were sufficiently adverse to dissuade an ordinary person from complaining about the conditions of his confinement. Therefore, contrary to defendant McLean's contention, plaintiff continues to state a facially plausible retaliation claim against him. As a result, the Court recommends denying the motion to dismiss. Further, the remaining defendants should not be dropped from this action because the claims against them are plausibly related to plaintiff's retaliation claim.

Accordingly, the Court recommends that defendants' motions be denied.

## BACKGROUND

Plaintiff, proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff's fifth amended complaint is currently the operative complaint, filed on October 28, 2022. Dkt. 127.

Plaintiff is incarcerated at Monroe Correctional Complex–Special Offender's Unit ("MCC"). Dkt. 127 at 3. Plaintiff has sued: (1) Tammy O'Reilly, a correctional officer in MCC's mailroom; (2) Melinda Tuggle, an employee in MCC's mailroom; (3) Douglas McLean (properly spelled "McLane," *see* Dkt. 129), a correctional officer at MCC; (4) Kathryn Grey, a former correctional mental health unit supervisor at MCC; (5) Christine Pratt, a mental health counselor at MCC; (6) Sonia Mills, a former classification counselor at MCC; (7) Camden Crouse, a classification counselor at MCC; and (8) Lily Harris, an employee of "Correctional

Industries," which contracts with the DOC to provide food services to prisoners in DOC custody. *See id*. at 3–5. Plaintiff sues each defendant in his or her individual and official capacity. *See id*.

Plaintiff makes the following allegations in his fifth amended complaint. Plaintiff alleges that, on June 25, 2018, defendant Harris "wrote a false infraction report against [plaintiff] alleging multiple rule violations." *Id*. at 5. As a result, defendant Grey allegedly told plaintiff that he was terminated from his position in the prisoner kitchen. *Id*. at 8. According to plaintiff, nondefendant Officer Sutherland told plaintiff that he knew that plaintiff was "fired because you are suing everybody." *Id*. At that time, plaintiff was litigating against DOC employees. *Id*. at 7–8.

On December 13, 2018 and November 18, 2019, defendant O'Reilly and/or defendant Tuggle allegedly opened plaintiff's "legal mail" without plaintiff being present. *Id*. at 9–10.

Plaintiff alleges that, on July 25, 2019 and October 28, 2019, defendant Mills was present when plaintiff discussed his civil rights case with counsel. *Id*. at 10–11. Plaintiff claims that defendant Mills listened to these conversations in order to retaliate against plaintiff for filing a lawsuit against a fellow DOC employee. *Id*. Likewise, on December 12, 2019, defendants Crouse and Pratt allegedly were present while plaintiff discussed his civil case with counsel. *Id*. at 11–12. Plaintiff claims that defendant Crouse listened to this conversation in order to retaliate against plaintiff for filing a lawsuit against a fellow DOC employee. *Id*. at 11. He also claims that defendant Pratt was present at the December 12, 2019 meeting in order to "impede[ ] on [plaintiff's] ability to consult with counsel on legal matters in private and confidentially." *Id*. at 12. Nondefendant Lieutenant Richards allegedly instructed defendant Grey to inform escort staff that plaintiff's visits with counsel were private, but presumably defendant Grey did not do so. *Id*.

According to plaintiff, in January 2020, defendant McLane intentionally broke his

1 | typewriter. *Id*. at 13. Plaintiff further alleges that, between January 2020 and July 2020, his
2 | typewriter was intentionally broken two more times. *Id*. Plaintiff adds that he was forced to buy a
3 | new typewriter "to participate in college and litigation." *Id*.
4 |   In January or February 2020, defendant Grey told plaintiff that "he was being harassed
5 | because he was not liked by staff because he wrote grievances and sued staff." *Id*. at 13–14.
6 | Defendant Grey then allegedly told plaintiff to stop writing grievances. *Id*. at 14.
7 |   Plaintiff alleges that, on September 15, 2020, he received mail that had been "vandalized"
8 | by unnamed mailroom employees. *Id*.
9 |   Plaintiff alleges that, on February 25, 2021, two books he purchased were delivered to the
10 | mailroom, but were stolen by mailroom staff. *Id*. He further alleges that days earlier, on February
11 | 20, 2021, four books he purchased were delivered to the mailroom, but he did not receive those
12 | books until March 19, 2021. *Id*. at 14–15. He also alleges that, on February 26, 2021, three books
13 | he purchased were delivered to the mailroom, but again did not receive those books until March
14 | 19, 2021. *Id*. at 15. Plaintiff claims that the failure to deliver these books within five days of their
15 | arrival at MCC violated DOC regulations. *Id*. at 14–15. In connection with these allegations,
16 | plaintiff asserts that defendant McLane picked up a mailbag containing plaintiff's books on
17 | March 9, 2021, proceeded through various areas of MCC with the mailbag, and eventually
18 | entered E-Unit but intentionally did not give the books to nondefendant Officer Reggae to
19 | distribute to plaintiff. *Id*. at 15. Plaintiff alleges that Defendant McLane's failure to deliver the
20 | books, along with breaking the typewriter, were done intentionally to harass plaintiff. *Id*.
21 |   Plaintiff also alleges that MCC staff tampered with his incoming and outgoing mail in
22 | other ways. *Id*. at 15–16. On May 27, 2021, defendant O'Reilly rejected incoming mail for
23 | plaintiff containing photographs that she claimed were sexually explicit. *Id*. at 15. He claims
24 |

REPORT AND RECOMMENDATION - 4

defendant O'Reilly rejected these photos, which plaintiff states were not in fact sexually explicit, in order to harass plaintiff. *Id*. Also, on April 16, 2021, plaintiff completed a request to withdraw funds from his spendable account to purchase school supplies, but as of June 9, 2021, the related check he mailed out from the mailroom was missing. *Id*. at 15–16. In July 2021, plaintiff received a letter from Adams State University stating that the above-referenced check had been received, but no order form was included in the mailing. *Id*. at 16. Plaintiff asserts that the order form was removed from the mailing by mailroom staff in order to harass him. *Id*.

Plaintiff alleges that nondefendant Nurse Jaeger told him that the mailroom employees did not like him because he wrote grievances, sued staff members, and was a "troublemaker." *Id*.

Finally, plaintiff alleges that defendant Grey, as supervisor, was negligent in supervising her subordinates and failed to remedy the wrongs committed against plaintiff by the other defendants. *Id*. at 16–17.

Based on these allegations, plaintiff brings four claims in his fifth amended complaint. In count I, plaintiff asserts that defendants violated his First Amendment rights when they retaliated against him for exercising his right to file grievances and lawsuits regarding his conditions of confinement. *See id*. at 17–20. In count II, plaintiff alleges that defendants Crouse, Grey, Mills, and Pratt violated his First Amendment rights by impeding on his ability to consult with his counsel confidentially and in private. *Id*. at 20–21. In count III, plaintiff alleges defendants violated his Fourteenth Amendment rights when they failed to provide plaintiff with a location to meet with his counsel for a private conversation without being overheard by others. *Id*. at 21. And in count IV, plaintiff alleges defendants Crouse, Grey, Mills, and Pratt interfered with his access to the courts in violation of the First Amendment when they remained in the room while plaintiff was attempting to have a confidential and private meeting with his counsel. *Id*. at 21–22.

1 | Plaintiff seeks various forms of damages and declaratory relief. *See id*. at 22–23.

2 | **DISCUSSION**

3 | **I.      Motion to Dismiss**

4 | Defendant McLane moves the Court to dismiss plaintiff's retaliation claim against him
5 | because he has failed to state a claim for relief and because he is entitled to qualified immunity.
6 | *See* Dkt. 129.

7 | **A.      Failure to State a Claim**

8 | Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a
9 | plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to
10 | relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
11 | (2007). The pleadings must raise the right to relief beyond the speculative level and must provide
12 | "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
13 | will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On
14 | a motion to dismiss, courts accept as true a plaintiff's well-pleaded factual allegations and
15 | construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St.*
16 | *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Specific legal theories need
17 | not be pleaded so long as sufficient factual averments show that the claimant may be entitled to
18 | some relief." *Fontana v. Haskin,* 262 F.3d 871, 876–77 (9th Cir. 2001).

19 | A *pro se* complaint must be "liberally construed" and held "to less stringent standards
20 | than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639
21 | F.3d 916, 923 & n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

22 | "Within the prison context, a viable claim of First Amendment retaliation entails five basic
23 | elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because

24 |

of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (citations omitted).

The First Amendment protects a prisoner's right "to file prison grievances," and to "pursue civil rights litigation in the courts." *Id.* at 567 (citations and internal quotation marks omitted). Adverse action has a chilling effect on the prisoner's First Amendment rights if the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "A plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm that is more than minimal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration adopted) (citations and internal quotation marks omitted).

Regarding causation, "the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* "Direct evidence of retaliatory intent" or "a chronology of events from which retaliation can be inferred" may demonstrate the requisite causal connection. *See id.* (citations omitted).

Defendant McLane argues that plaintiff has failed to establish a retaliation claim against him. Dkt. 129 at 4–9. The Court disagrees. In his fifth amended complaint, plaintiff alleges that defendant McLane intentionally broke his typewriter and that plaintiff had to purchase a new typewriter to take his college classes and litigate his civil case. Dkt. 127 at 13. He also alleges that defendant McLane intentionally failed to timely deliver books plaintiff had ordered. *Id.* at 14–15. Further, his allegations support a reasonable inference that defendant Grey told him around that same time that defendant McLane and others took actions against plaintiff because of his protected activity, namely filing grievances and lawsuits. *See id.* at 13–14. Therefore,

plaintiff has adequately alleged that defendant McLane retaliated against him in violation of plaintiff's First Amendment rights. The Court recommends that defendant McLane's motion to dismiss with respect to this claim be denied.

### B.  Qualified Immunity

Defendant McLane alternatively argues that qualified immunity bars plaintiff's claim against him. Dkt. 129 at 9–12. "[G]overnment officials performing discretionary functions [are entitled to] qualified immunity, shielding them from civil damages liability as long as their actions could have reasonably been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987).

The first step in the qualified immunity analysis is whether the facts "[t]aken in the light most favorable to the party asserting the injury … show [that] the [defendant's] conduct violated a constitutional right[.]" *See Saucier v. Katz,* 533 U.S. 194, 201 (2001).

The second step is whether the right was clearly established at the time of the alleged violation. *Id.* When identifying the right that was allegedly violated, a court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than all of the factual circumstances surrounding the alleged violation. *See Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1092-93 (9th Cir. 1998); *Carnell v. Grimm*, 74 F.3d 977, 979-80 (9th Cir. 1996); *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995); *Camarillo v. McCarthy*, 998 F.2d 638, 640 (9th Cir. 1993).

At this stage, assuming all allegations in the fifth amended complaint are true, plaintiff has sufficiently alleged that defendant McLane violated plaintiff's rights under the First Amendment. Thus, the Court next considers whether the contours of the right were clearly established. *See Saucier,* 533 U.S. at 201. Here, "the prohibition against retaliatory punishment is

1  'clearly established law' in the Ninth Circuit, for qualified immunity purposes. That retaliatory
2  actions by prison officials are cognizable under § 1983 has also been widely accepted in other
3  circuits." *Rhodes v. Robinson,* 408 F.3d 559, 567 (9th Cir. 2005) (quoting *Pratt v. Rowland*, 65
4  F.3d 802, 806 & n.4 (9th Cir. 1995) and citing *Schroeder v. McDonald,* 55 F.3d 454, 461 (9th
5  Cir. 1995); *Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir. 1994); *Frazier v. Dubois,* 922 F.2d
6  560, 561–62 (10th Cir. 1990); *Madewell v. Roberts,* 909 F.2d 1203 (8th Cir. 1990); *Gill v.
7  Mooney,* 824 F.2d 192, 194 (2d Cir. 1987); *Bridges v. Russell,* 757 F.2d 1155 (11th Cir. 1985);
8  *Buise v. Hudkins,* 584 F.2d 223 (7th Cir. 1978)). Thus, the Court concludes that plaintiff had a
9  clearly established right to be free from the allegedly retaliatory actions.

10  Therefore, a determination on qualified immunity is not appropriate at this stage. The
11  Court recommends that defendant McLane's motion to dismiss on the basis of qualified
12  immunity be denied.

13  **II.  Motions to Sever or Drop Misjoined Parties**

14  Defendants move the Court to drop defendants O'Reilly, Tuggle, Pratt, Mills, Crouse,
15  Harris, and Grey from this action because they were misjoined. *See* Dkts. 129, 131.

16  Rule 18(a) of the Federal Rules of Civil Procedure allows plaintiff to join as many claims
17  as he has against an opposing party in one suit. Plaintiff may also add any additional claims
18  against other defendants, if those claims arise from the same transaction, occurrence, or series of
19  transactions as his original claim. *See* Fed. R. Civ. P. 20(a)(2). Rule 20 "is to be construed
20  liberally in order to promote trial convenience and to expedite the final determination of
21  disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg.
22  Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1972). Pursuant to Rule 21 of the Federal Rules of
23
24

1 | Civil Procedure, a court may correct a misjoinder of parties or claims by adding or dropping a
2 | party or severing any claim.

3 |      Defendants argue that plaintiff is attempting to circumvent the Prison Litigation Reform
4 | Act ("PLRA"), and avoid paying filing fees and incurring multiple strikes, by filing multiple
5 | lawsuits as one. *See* Dkt. 129 at 15; Dkt. 131 at 6–7. For support, defendants cite *George v.*
6 | *Smith*, 507 F.3d 605 (7th Cir. 2007), a case in which the Seventh Circuit agreed with the district
7 | court that it was improper for a plaintiff to assert 50 distinct claims against 24 defendants in one
8 | lawsuit in order to circumvent the PLRA. The Seventh Circuit explained that "Claim A against
9 | Defendant 1 should not be joined with unrelated Claim B against Defendant 2." 507 F.3d at
10 | 607. However, the Court must construe both Rule 20 and plaintiff's pleadings liberally. *See*
11 | *League to Save Lake Tahoe*, 558 F.2d at 917; *Erickson*, 551 U.S. at 94.

12 |      Construing his fifth amended complaint liberally, the claims brought by plaintiff, unlike
13 | the cases cited by defendants, are plausibly related. Defendants ask the Court to read every claim
14 | in isolation and limited to paragraphs each claim incorporates. But, although not explicitly
15 | incorporated in every claim, plaintiff has made certain allegations that indicate that the claims
16 | may be related. For example, plaintiff alleges that, as a result of his efforts to grieve his
17 | conditions of confinement through the filing of grievances or lawsuits, he faced retaliation,
18 | which included, filing false infraction and behavior observation reports, tampering with his legal
19 | and other mail, denying him confidential and private meetings with counsel, interfering with his
20 | access to the courts, and destroying or delaying delivery of his property. Dkt. 127 at 5–17. Thus,
21 | a reasonable inference can be made that the alleged actions by defendants were taken because
22 | plaintiff complained about his conditions of confinement. Indeed, in opposing defendants'
23 |
24 |

motions, plaintiff states, "This is a Campaign Harassment action in which all defendants named all retaliated against [plaintiff] based on his constitutionally protected conduct." Dkt. 132 at 4.

While joining a number of unrelated claims in a single action should not be used to circumvent the Prison Litigation Reform Act, requiring a claimant to file multiple claims in order to up the ante for filing a complaint could also be construed as a means of violating the spirit of the Act. The Court will not condone either practice.

Should further discovery show that an inference combined actions to violate plaintiff's rights is not reasonable, the Court can reconsider whether severing one or more claims and/or defendants would be appropriate. *See* Fed. R. Civ. P. 21 ("On motion or on its own the court may *at any time*, on just terms, add or drop a party") (emphasis added). Accordingly, the Court recommends that defendants' motions (Dkts. 129, 131) be denied.

## CONCLUSION

For the reasons set forth above, the Court recommends that defendant McLane's motion to dismiss and all defendants' motion to sever or drop misjoined parties be denied. Dkts. 129, 131.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 6, 2023** as noted in the caption.

1    Dated this 22nd day of December, 2022.

3    _____
     J. Richard Creatura
4    Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 12