UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMALL S. BAKER,

                Plaintiff,

    v.

TAMMY O'REILLY, *et al.*,

                Defendants.

CASE NO. 2:21-cv-00361-MJP-GJL

REPORT AND RECOMMENDATION

Noting Date: January 26, 2024

    This matter is before the Court on referral from the District Court and on Defendants' Motion for Summary Judgment ("Motion"). Dkt. 162. For the reasons discussed below, the Court recommends that Defendants' Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

    Plaintiff Jamall Baker ("Plaintiff"), a prisoner proceeding *In Forma Pauperis* who is currently confined at the Monroe Corrections Center—Special Offender's Unit ("MCC"), brings claims under 42 U.S.C. § 1983 against the following Defendants: Tammy O'Reilly, Melinda Tuggle, Douglas McLean (properly spelled "McLane," *see* Dkt. 129), Kathryn Grey, Christine Pratt, Sonia Mills, Camden Crouse, and Lily Harris. Dkt. 127 at 3–5.

1

2

3

4

5

6

7

    In his operative Complaint—the Fifth Amended Complaint ("FAC")—Plaintiff alleges
the following: On June 25, 2018, Harris "wrote a false infraction report against [Plaintiff]
alleging multiple rule violations." *Id.* at 5. As a direct result of this report, Grey terminated
Plaintiff from his position in the prison kitchen. *Id.* at 8. According to Plaintiff, Officer
Sutherland told him that the reason Grey and Harris fired him was because he was "suing
everybody." *Id.* At that time, Plaintiff was litigating an ancillary case against Department of
Corrections ("DOC") employees. *Id.* at 7–8.

8

9

    On December 13, 2018, and November 18, 2019, O'Reilly and Tuggle allegedly opened
Plaintiff's "legal mail" outside of Plaintiff's presence. *Id.* at 9–10.

10

11

12

13

    On July 25, 2019, and October 28, 2019, Mills accompanied Plaintiff to a secure room
where Plaintiff discussed his civil rights case with counsel. *Id.* at 10–11. Plaintiff claims that
Mills could overhear the conversation Plaintiff had with his counsel, and that Mills did so to
retaliate against Plaintiff for filing a lawsuit against a fellow DOC employee. *Id.*

14

15

16

17

    Likewise, on December 12, 2019, Crouse and Pratt accompanied Plaintiff to a secure
room where Plaintiff could discuss his civil rights case with counsel. *Id.* 11–12. Crouse and Pratt
were also present at this meeting to retaliate against Plaintiff and to "impede[] on [Plaintiff's]
ability to consult with counsel on legal matters in  private and confidentially." *Id.* at 12.

18

19

20

    In January 2020, McLane allegedly broke Plaintiff's typewriter. *Id.* at 13. Plaintiff further
alleges that, between January 2020 and July 2020, his typewriter was intentionally broken two
more times, forcing him to buy another typewriter. *Id.*

21

22

23

    Finally, Plaintiff states that MCC staff tampered with his incoming and outgoing mail. *Id.*
at 15–16. Specifically, O'Reilly rejected incoming mail for Plaintiff, which contained
photographs that she falsely claimed were sexually explicit. *Id.* at 15.

24

REPORT AND RECOMMENDATION - 2

1    While the above allegations in the FAC form the framework of Plaintiff's claims, the

2  parties' evidence diverges on key points concerning Plaintiff's retaliation claim about the loss of

3  his job in the prison kitchen, and is discussed separately below.

4  **A.    Plaintiff's Evidence**

5    Plaintiff has submitted multiple Declarations, as well as various prison documents

6  concerning the loss of his job at the kitchen. *See generally* Dkt. 180. His evidence focuses on his

7  termination at the prison kitchen.

8    In November 2017, Plaintiff filed a lawsuit against Jerald Grant and other DOC

9  employees. Dkt. 180 at 3. Several months later, on June 25, 2018, Harris wrote an infraction

10  report against Plaintiff, stating that Plaintiff became verbally aggressive when he refused an

11  order from Harris to leave the kitchen. *Id.* at 3–4. The infraction report caused Plaintiff to lose

12  his job. Plaintiff claims that Harris was the individual yelling in the kitchen, and that Harris filed

13  the false report because she was friends with Jerald Grant. *Id.* at 4. Correctional Officer

14  Sutherland told Plaintiff that he was fired because he was suing everybody in the prison. *Id.*

15    In his Response to the Motion, Plaintiff attaches two Declarations from witnesses who

16  ostensibly corroborate his version of events. The first witness, Gerald Collick, stated, "On June

17  25, 2018 [sic.] Jamall Baker did not yell or scream at Mrs. Harris[.]" *Id.* at 5. The second

18  witness, Kyle Stoddard, stated that Harris was the person yelling on June 25, 2018, not Plaintiff.

19  *Id.* In addition, Stoddard claimed that Plaintiff did not disobey any orders from Harris. *Id.*

20  **B.    Defendants' Evidence**

21    Defendants rely upon the Declaration of Lily Harris to rebut Plaintiff's arguments

22  concerning his dismissal from the kitchen. Dkt. 165.

23

24

REPORT AND RECOMMENDATION - 3

First, Harris stated the claim that she filed an infraction report against Plaintiff because he was suing Grant was false. *Id.* at 1. She claimed that she "was not aware of the details of [Plaintiff's] alleged former lawsuit against Mr. Grant. I have no interest in [Plaintiff's] legal activities." *Id.* Finally, she added that Plaintiff "was terminated from his Correctional Industries job because of his own behavior, not because of [the] lawsuit." *Id.* at 2.

According to Harris, on June 25, 2018, Plaintiff became verbally aggressive toward her, and he refused a direct order to leave the kitchen. *Id.* Officer Hoskins also gave Plaintiff orders to return to his housing unit, but he continued to be disruptive and disobeyed those orders. *Id.* Hoskins had to radio another staff member to take Plaintiff back to his unit. *Id.*

## II.      LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.

2000). Where the moving party bears the burden at trial, it can meet its initial burden by presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the evidence presented must establish beyond controversy every essential element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888–89 (9th Cir. 2003).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

Allegations based merely on the plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *Id.*; *McElyea v. Babbitt*, 833 F.2d 196, 197–98 n.1 (9th Cir. 1987). In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 248.

**B.    Section 1983 Standard**

In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the conduct complained of was committed by a person acting under color of state law and (2) the

1    conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

2    of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds,*

3    *Daniels v. Williams*, 474 U.S. 327 (1986). The causation requirement of § 1983 is satisfied only

4    if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's

5    affirmative act, or omitted to perform an act which he or she was legally required to do that

6    caused the deprivation complained of. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355

7    (9th Cir. 1981).

8                                   **III.    DISCUSSION**

9    **A.    Plaintiff's Motion to Strike**

10          As a preliminary matter, Plaintiff moved to strike portions of the Declarations that Crouse

11   and Mills submitted. *See generally* Dkts. 166, 183. Specifically, Plaintiff contends the statement

12   in these two Declarations that he "can become very violent, very quickly" is hearsay. Dkt. 180 at

13   8.

14          A court may consider only admissible evidence in ruling on a motion for summary

15   judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ.

16   P. 56(c). However, at the summary judgment stage, the court is focused on the admissibility of

17   the content, rather than the form, of the evidence. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37

18   (9th Cir. 2003), *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive

19   summary judgment, a party does not necessarily have to produce evidence in a form that would

20   be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil

21   Procedure 56.").

22          Objections to evidence because the evidence is irrelevant, speculative, argumentative,

23   vague and ambiguous, or constitutes an improper legal conclusion, are duplicative of the

24

summary judgment standard itself. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006). Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show the declarant or affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Accordingly, the Court declines to strike the challenged portions of the challenged Declarations (Dkts. 166, 183) but will only consider statements in those Declarations that meet the requirements of Rule 56.

**B.    Defendants' Motion for Summary Judgment**

Defendants seek summary judgment dismissing all of Plaintiff's claims. Dkt. 162 at 7–8. Defendants contend that Plaintiff has not established a triable issue of fact as to all of the elements of his First Amendment retaliation claims, his legal mail claims, and his claims concerning the presence of prison officials at his meeting with his counsel. *Id.* at 8–17. In addition, Defendants claim to be entitled to qualified immunity as to all claims. *Id.* at 17–18.

1.    <u>Retaliation Claims</u>[1]

In his first retaliation claim, Defendants argue that Plaintiff was fired from his position with the prison kitchen because of his behavior while working, not as an act of retaliation. Dkt. 162 at 9. In her Declaration, Harris stated that Plaintiff "became verbally aggressive and accusatory towards me. He then refused my direct order to him to leave the kitchen." Dkt. 165 at 2. This disobedience resulted in Plaintiff's termination.

---

[1] It also appears that Plaintiff raises claims against Grey, a supervisor at the prison. *See generally* Dkt. 127. However, vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983. *Lemire v. California Dep't of Corrs. & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001). Plaintiff does not state a claim against Grey under this standard because there is no evidence that Grey was personally involved in any constitutional deprivation; therefore, the Court recommends that Grey be dismissed from this action.

1    Plaintiff responds that his first retaliation claim rests upon a course of retaliatory conduct,

2    with one witness, Sutherland, stating that Plaintiff lost his job because he was "suing

3    everybody." Dkt. 180 at 4. Another witness, Stoddard, said that Plaintiff did not yell or disobey

4    an order from Harris. *Id.* at 36. One final witness stated that Plaintiff did not yell or scream at

5    Harris in the prison kitchen. *Id.* at 5, 34.

6    In his second retaliation claim, Defendants argue that O'Reilly's rejection of Plaintiff's

7    incoming mail containing sexually explicit photographs does not constitute retaliation because

8    such photos are illicit under prison rules. Dkt. 162 at 16; Dkt. 167 at 2. Plaintiff does not appear

9    to rebut this argument in either his Response (Dkt. 180) or Surreply (Dkt. 184).

10    A plaintiff must prove five basic elements to prevail on such a claim of retaliation: "(1)

11    An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

12    prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of

13    his First Amendment rights, and (5) the action did not reasonably advance a legitimate

14    correctional goal." *Id.* at 567–68. The plaintiff must also show the protected conduct was the

15    substantial or motivating factor driving the prison official's conduct. *See Mt. Healthy City Sch.*

16    *Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286–87 (1977); *Brodheim v. Cry,* 584 F.3d 1262, 1271

17    (9th Cir. 2009). A court must "'afford appropriate deference and flexibility' to prison officials in

18    the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."

19    *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482

20    (1995)).

21    In the second claim, the Parties appear to focus their arguments on the fifth element of

22    the retaliation test: whether the alleged retaliatory action did not reasonably advance a legitimate

23    correctional goal. The Court therefore addresses only the fifth element in that claim.

24

REPORT AND RECOMMENDATION - 8

1

          a.        _Kitchen Position Claim_

2

          Defendants' Motion challenges Plaintiff's claim that Harris retaliated against him by

3

terminating him from his position in the prison kitchen because he sued another prison official.

4

Dkt. 127 at 7–8.

5

          Defendants submitted evidence that Harris fired Plaintiff from his position because he

6

was "verbally aggressive toward [Harris]. [Plaintiff] then refused [Harris's] direct order to

7

[Plaintiff] to leave the kitchen." Dkt. 165 at 2. In addition, Harris states in her Declaration that

8

another prison official gave Plaintiff orders to go back to his housing unit, but Plaintiff continued

9

to be disruptive and had to be escorted back to his housing unit. _Id._  This altercation was the

10

catalyst behind Plaintiff's dismissal. Plaintiff disputes this testimony and evidence and asserts

11

instead that he did not disobey orders or become verbally aggressive. Dkt. 180 at 3–5. Plaintiff

12

also provides two Declarations from witnesses, who stated that Harris, not Plaintiff, was the

13

person yelling during the incident in the kitchen. _Id._ at 34, 36.

14

          Defendants contend that Plaintiff's assertion that he was fired from his job for suing

15

another prison official is speculative because Plaintiff relies on testimony from a correctional

16

officer, Sutherland, who had no knowledge of the situation. Dkt. 181 at 4–5. Sutherland told

17

Plaintiff that he was "fired because [he is] suing everybody." _Id._ at 4. Additionally, Defendants

18

point out that Sutherland said that he was joking with Plaintiff when he made the above

19

statement. _Id._ at 5. The Court does not credit Plaintiff's evidence regarding Sutherland but does

20

accept his arguments regarding the statements from the other two witnesses—namely, that

21

Plaintiff did not yell or become verbally aggressive the day Harris wrote an infraction report

22

against him, which resulted in Plaintiff losing his position in the kitchen. This evidence is

23

sufficient to raise a question of fact regarding whether Harris retaliated against Plaintiff.

24

1    The Court finds there are issues of fact preventing the entry of summary judgment as to

2    Plaintiff's retaliation claim. The Court therefore considers whether Harris is entitled to summary

3    judgment dismissing that claim based upon qualified immunity.

4    Unless Plaintiff makes a two-part showing, qualified immunity shields government

5    officials from liability for damages. He must show: (1) the official(s) violated a federal statutory

6    or constitutional right; and (2) at the time of the alleged act or failure to act, there was clearly

7    established law that defined the contours of the federal right, such that every reasonable official

8    would understand that what they are doing is unlawful. *City of Escondido, Cal. v. Emmons*, 139

9    S. Ct. 500, 503 (2019). When qualified immunity is reviewed in the context of a defense motion

10   for summary judgment, the evidence must be considered in the light most favorable to the

11   plaintiff with respect to central facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

12   Summary judgment is not appropriate where genuine issues of material fact prevent a

13   determination of qualified immunity. *Bonivert v. City of Clarkston*, 883 F.3d 865, 871–72 (9th

14   Cir. 2018).

15   The Court may analyze the two prongs of qualified immunity in either order. *Pearson v.*

16   *Callahan*, 555 U.S. 223, 236 (2009). With respect to the second prong, "[t]hough the

17   constitutional right must be clearly established such that 'a reasonable official would understand

18   that what he is doing violates that right,' . . . '[t]here need not be a case dealing with these

19   particular facts to find [the officer's] conduct unreasonable.'" *Scott v. Cnty. of San Bernardino*,

20   903 F.3d 943, 951 (9th Cir. 2018) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Doe ex rel.*

21   *Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 910 (9th Cir. 2003)).

22

23

24

1    As discussed above, the Court finds there are triable issues of fact as to whether Harris

2    violated Plaintiff's First Amendment rights. The qualified immunity inquiry therefore focuses on

3    the second prong.

4    Here, Plaintiff's claim asserts Harris undertook a course of retaliatory conduct in

5    response to Plaintiff filing lawsuits against other prison staff members. Dkt. 127 at 8. The law at

6    the time of these actions was clear that even a threat of adverse action due to the filing of a

7    lawsuit constitutes actionable retaliation. *See Austin v. Terhune*, 367 F.3d 1167, 1170-71 (9th

8    Cir. 2004) (recognizing claim where prisoner alleged that correctional officer falsely accused

9    prisoner of misconduct in retaliation for prisoner's earlier filing of lawsuit).

10    The facts submitted by Plaintiff—when viewed in the light most favorable to Plaintiff for

11    purposes of this Motion—could support a jury determination that Harris' course of conduct

12    violated Plaintiff's clearly established right to be free from retaliation. The Court therefore finds

13    that Harris is not entitled to summary judgment on qualified immunity grounds and, accordingly,

14    recommends that Defendants' Motion dismissing Plaintiff's retaliation claim against Harris be

15    denied.

16    b.    *Sexual Mail Claim*

17    As discussed above, O'Reilly stated that he rejected Plaintiff's incoming mail containing

18    sexually explicit images because receiving such mail violated prison regulations. Dkt. 162 at 16;

19    Dkt. 167 at 2. In his Declaration, O'Reilly states:

20       [Plaintiff] claims that I retaliated against him for an unidentified reason on February
         25, 2023, when his sexually explicit photos were rejected by the mail room. I did
21       write a rejection notice regarding incoming photos that appeared to be sexually
         explicit as defined by WAC 137-48-020(13). In rejecting these photos I was simply
22       doing my job and following policy. The photos were rejected because they were
         sexually explicit, not for any other reason.

23    Dkt. 167 at 2.

24

REPORT AND RECOMMENDATION - 11

Plaintiff does not appear to offer evidence or argument that O'Reilly acted in a retaliatory manner for the exercise of his First Amendment rights. As the Court must afford deference to prison officials in the evaluation of the correctional reasons for the conduct alleged to be retaliatory, it finds that, as a matter of law, that O'Reilly's rejection of Plaintiff's sexually explicit mail does not constitute retaliation because O'Reilly rejected the mail in accordance with prison regulations. In addition, Plaintiff fails to overcome the burden of proving allegedly retaliatory action does not advance legitimate correctional goals. Accordingly, the Court recommends that Plaintiff's First Amendment claim of retaliation against O'Reilly be dismissed with prejudice.

### 2.    Tampering With Legal Mail Claims

In his first legal mail claim, Plaintiff alleges that O'Reilly violated his rights when opening his legal mail outside of his presence. Dkt. 127 at 9. In the Motion, Defendants argue that O'Reilly accidentally opened Plaintiff's mail and immediately followed prison regulations to remedy the mistake. Dkt. 162 at 12. In his second legal mail claim, Plaintiff alleges that Tuggle violated his rights by opening his mail outside of his presence; however, Defendants argue that the mail in this incident was not "legal mail" because it was from the Court. *Id.* Again, Plaintiff fails to address these arguments in his Response (Dkt. 180) and Surreply (Dkt. 184). The Court will address each claim in turn.

### a.    *Accidental Opening of Legal Mail Claim*

The Ninth Circuit and the Supreme Court have approved protections for inmates and the legal mail they receive. For example, prison officials may not review outgoing legal mail for legal sufficiency before a prison sends the mail to a court. *See Ex Parte Hull*, 312 U.S. 546, 549 (1941). However, whether prison officials may open legal mail outside the inmate's presence

appears to be an open question in the Ninth Circuit. *See Mann v. Adams*, 846 F.2d 589, 590 (9th Cir. 1988) (per curiam) (holding that the constitutional implications of opening mail outside of an inmate's presence is undecided). Importantly, the Ninth Circuit has held that an isolated instance or occasional opening of legal mail outside an inmate's presence does not rise to the level of a constitutional violation. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989).

In the Motion and in O'Reilly's Declaration, O'Reilly states that he opened Plaintiff's legal mail in error, and he rectified the error by following DOC regulations. Dkt. 162 at 12; Dkt. 167 at 1–2. Specifically, O'Reilly states that after opening the mail, he "sealed the contents [of the mail] without review and noted this on the outside of the envelope. It was processed inbound as legal." Dkt. 167 at 2. This isolated and negligent incident of opening Plaintiff's legal mail outside of his presence does not constitute a constitutional violation. As such the Court recommends that this claim be dismissed with prejudice.

        b.    *Court Mail Claim*

"Mail from courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall,* 83 F.3d 1083, 1094 (9th Cir. 1996) *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998). Prison officials need not treat all mail sent between prisoners and government officials as legal mail, and mail from courts and state agencies is not considered "legal mail," and may be opened and inspected outside an inmate's presence. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).

The well-established precedent of this Circuit precludes Plaintiff from stating a legal mail claim based on the fact that Tuggle opened Plaintiff's documents from the Court. The mail in question in this claim is not "legal mail," and, therefore, Plaintiff's claim against Tuggle fails as

1    a matter of law. Further, Plaintiff does not appear to contest Defendants' arguments in any of his

2    briefs. Thus, the Court recommends that this claim be dismissed with prejudice.

3            3.    Attorney Visits Claim

4            Plaintiff alleges that prison officials violated various constitutional protections when they

5    were present in the room during meetings Plaintiff had with his attorneys to discuss a case. *See*

6    *generally* Dkt. 127. First, Plaintiff claims that on two occasions Mills sat "nearby in the room

7    while [Plaintiff] met with his attorneys." *Id.* at 10. Second, Plaintiff states that Crouse and Pratt

8    also sat in the meeting room while Plaintiff met with his attorneys. *Id.* at 11. Defendants argue

9    that the presence of these prison officials in the room where Plaintiff met with his attorneys was

10   "reasonably related to legitimate penological interests." Dkt. 162 at 14.

11           In his Response, Plaintiff argues that the presence of these prison officials was

12   unnecessary and even adversely affected one of the cases he was litigating. Dkt. 180 at 13.

13   Specifically, Plaintiff claims that the presence of Crouse and Pratt during one meeting upset him

14   so much that he left the meeting without fully speaking with his attorneys. *Id.* This, according to

15   Plaintiff, led to the dismissal of his case. *Id.* While Plaintiff contends that the presence of the

16   prison officials violated various constitutional protections, the Court agrees with Defendants'

17   argument.

18           Even if a prison regulation infringes upon an inmate's constitutional rights, the regulation

19   is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S.

20   78, 89 (1987). And "maintaining institutional security and preserving internal order and

21   discipline are essential goals that may require limitation or retraction of the retained

22   constitutional rights of both convicted prisoners and pretrial detainees. Central to all other

23   corrections goals is the institutional consideration of internal security within the corrections

24

1    facilities themselves." *Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979). Prison officials need only to

2    put forward a legitimate government interest and provide some evidence that the stated interest is

3    the actual reason for the regulation. *Casey v. Lewis*, 4 F.3d 1516, 1520–21 (9th Cir. 1993). In

4    fact, prison officials can justify a prison regulation based on an anticipated security problem.

5    *Friedman v. State of Az.*, 912 F.2d 328, 332 (9th Cir. 1990).

6            Plaintiff argues the following: (1) the presence of the guards was an act of retaliation

7    against him, (2) he was not a threat to his visiting attorneys, and (3) there were alternative ways

8    for him to meet with his attorneys that protected his privacy. Dkt. 180 at 13–14. Despite making

9    these arguments, Plaintiff fails to overcome the deference due to correctional facilities in setting

10   regulations to provide internal security. Both Mills and Crouse state that they escorted Plaintiff

11   to meetings with his attorneys to provide security. Dkt. 166 at 2; Dkt. 183 at 1. And it was a

12   common practice for prison officials to provide security during meetings between inmates and

13   visitors. Dkt. 166 at 2. The policy of guards escorting inmates and sitting as far away as possible

14   from them during a meeting with visitors is reasonably related to legitimate penological interests

15   and does not constitute a constitutional violation. Therefore, the Court recommends that these

16   claims be dismissed with prejudice.

17           4.    Defendant McLane

18           In the FAC, Plaintiff speculates that McLane destroyed his typewriter. Dkt. 127 at 13.

19   Plaintiff also alleges that McLane did not process his mail. *Id.* at 15. During discovery, Plaintiff,

20   when asked about the allegations against McLane, stated, "I cannot prove [the allegations]. I am

21   moving to dismiss this claim." Dkt. 169, Ex. 3 at 2. However, when Plaintiff filed the FAC, he

22   did not remove the allegations against McLane. Dkt. 127 at 12–15. In his responsive briefs to the

23   Motion, Plaintiff does not contest Defendants' argument that Plaintiff fails to raise sufficient

24

1    evidence to state a claim against McLane. Therefore, the Court recommends that the claims

2    against McLane be dismissed with prejudice.

3        5.    <u>Qualified Immunity</u>

4        As stated above, Defendants argue that they are entitled to qualified immunity from suit.

5    Besides the retaliation claim based on Plaintiff's termination from his kitchen position, he has

6    failed to raise genuine issues of material fact concerning all his other constitutional claims.

7    Therefore, the Court need not address the question of qualified immunity for those claims.

8                        **IV.    CONCLUSION**

9        For the reasons discussed above, the Court recommends that Defendants' Motion (Dkt.

10   162) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court recommends

11   the following:

12       1.    Defendants' Motion be **DENIED** as to Plaintiff's retaliation claim against Harris;

13       2.    Defendants' Motion be **GRANTED** as to Plaintiff's retaliation claim against

14             O'Reilly;

15       3.    Defendants' Motion be **GRANTED** as to Plaintiff's Legal Mail Claims against

16             O'Reilly and Tuggle;

17       4.    Defendants' Motion be **GRANTED** as to Plaintiff's Attorney Visitation Claim

18             against Mills, Crouse, and Pratt;

19       5.    Defendants McLane and Grey be **DISMISSED** from this action.

20       Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties

21   shall have fourteen (14) days from service of this report to file written objections. *See also* Fed.

22   R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of

23   *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of

24

those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 26, 2024**, as noted in the caption.

Dated this 5th day of January, 2024.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17