UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMALL S. BAKER,<br><br>              Plaintiff,<br><br>    v.<br><br>TAMMY O'REILLY, et al.,<br><br>              Defendants. | CASE NO. C21-361 MJP<br><br>ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION |

This matter comes before the Court on Defendants' Motion for Reconsideration. (Dkt. No. 209.) Having reviewed the Motion and Plaintiff Jamall S. Baker's Response—which the Court has reviewed, though it was not properly filed because the Court did not request it, see Local Civil Rule 7(h)(3)—(Dkt. No. 210), and all supporting materials, the Court DENIES the Motion.

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION - 1

**ANALYSIS**

**A.      Legal Standard**

"Motions for reconsideration are disfavored." Local Civil Rule 7(h). "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Id.

**B.      Qualified Immunity**

Defendants fail to identify any manifest error in the Court's determination that they are not entitled to qualified immunity. Defendants contend the law is not clearly established that prison officials may not interfere with an inmate's ability to confer confidentially with counsel. The argument lacks merit.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 577 U.S. 7, 11–12 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix, 577 U.S. at 12 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

As the Court explained, it has long been clearly established that a prisoner has a "nearly sacrosanct" right to confer with counsel. (Order on Report and Recommendation at 15 (quoting Nordstrom v. Ryan, 762 F.3d 903, 910 (9th Cir. 2014)).) The Ninth Circuit has made abundantly clear that this same right prevents correctional officers from opening legal mail, as doing so

interferes with the right to communicate confidentially with counsel. (Id. (citing Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1212 (9th Cir. 2017)).) Together, these cases clearly established that prison officers cannot intrude on a prisoner's right to confer privately with counsel, and they do so with sufficient clarity to apply the facts at issue in this case. These cases do not identify the right at a "high level of generality." See District of Columbia v. Wesby, 583 U.S. 48, 63 (2018). Rather, they "gave the officers fair warning that their conduct was unconstitutional"—that listening in to private conversations between a prisoner and counsel violated the clearly-established right to confer privately and confidentially with counsel. Ballentine v. Tucker, 28 F.4th 54, 64 (9th Cir. 2022) (citation and quotation omitted). The Court finds no merit in Defendants' insistence that the law would only be clearly established if there was a case involving prison officials listening in to attorney-client conversations in a prison visitation room. The right to private communication with counsel is far more obvious in the context of a face-to-face meeting between the prisoner and counsel than with regard to opening legal mail and reading such confidential communications. Only a plainly incompetent officer would read Ryan and Hayes and conclude that although they could not open legal mail, they could nevertheless sit in a visitation room and listen to a prisoner attempt to speak privately with counsel. The Court finds no basis to reconsider its decision.

The Court also rejects Defendants' suggestion that the Court erred by examining the state of the law outside of the cases cited by the Parties. Baker did identify substantial authority on the legal issue, and the Court's own research, which confirmed the accuracy of Baker's argument, cannot be construed as legal or manifest error. Defendants essentially suggest that the Court should undertake no efforts to examine the law and confirm the controlling authority on point. Defendants have not cited to and the Court is not aware of any rule that prevents it from

undertaking research in order to make accurate and well-informed legal decisions. Defendants' argument is not well taken and poorly conceived.

**C.     No Manifest Error on Objections**

Defendants point out the Court overlooked a declaration from Camden Crouse in which he rebuts Baker's assertion that Crouse told Baker he was ordered to be present during Baker's meeting with counsel. (Mot. at 3; Declaration of Camden Crouse (Dkt. No. 183).) The Court acknowledges that this provides evidence disputing Baker's assertion about what Crouse may have told him. But it does not provide grounds for reconsideration. The statement Baker attributes to Crouse was merely an additional basis on which the Court denied summary judgment. (See Order at 16.) And Crouse's declaration merely confirms a dispute of fact exists as to this independent basis on which the Court denied summary judgment. The Court finds no manifest error.

Defendants also contend that Baker failed to disclose his alleged conversation with Crouse in response to a discovery request and that Defendants were unable to examine Baker about it during his deposition. Defendants contend they served an interrogatory that required Baker to identify this conversation with Crouse. Though awkwardly phrased, the interrogatory asked Baker to identify the substance of any conversation he had with anyone about the incidents referenced in the Third Amended Complaint, including the attorney visitations. (Dkt. No. 182-1 at 12.) Baker did not disclose the May 26, 2023 conversation with Crouse in his response to the interrogatory. (See id.) That is not surprising, given that Baker's responses were dated July 14, 2022, nearly a year before the conversation took place. (Id. at 14.) And while Baker should have supplemented this interrogatory response to identify the conversation, the Court finds no evidence of prejudice. Defendants knew of the allegations against Crouse's presence in the

visitation room and were given ample opportunity to depose Baker about any and all interactions he had with Crouse. Indeed, Baker specifically testified that Crouse was in the room and that Grey had been the person responsible for his presence. (Deposition of Jamall Baker at 92 (Dkt. No. 182-1 at 6).) Defendants have not identified any questions posed to Baker during the deposition that Baker failed to answer or that he hid his May 2023 conversation with Crouse from Defendants. At trial, Defendants will be free to probe the veracity and accuracy of Baker's declaration regarding the May 2023 statements attributed to Crouse. But the Court finds no reason to reject the declaration. And even if it did, it would not support granting summary judgment, for the reasons explained above.

The Court also finds no merit Defendants' assertion that "Baker's revelation about the alleged unwitnessed meeting with Crouse contradicts his own deposition testimony." (Mot. at 4 (citing Dkt. No. 181 at 8 (Defendants' MSJ Reply).) The evidence cited is merely the summary judgment reply brief, not actual evidence. This unsupported proposition is not a basis for reconsideration.

**D.    Other Evidentiary Objections**

Defendants complain that the Court imposed an incorrect evidentiary burden on them to identify a valid penological reason for their intrusion on Baker's right to visit with counsel. This argument misconstrues the Court's Order. The Court explained the legal standard and pointed out, in part, that Defendants had failed to provide sufficient, uncontroverted evidence to warrant summary judgment. (See Order at 17-21.) As the Court noted, the declarations concerning Baker's purported violent tendencies were based on conjecture and not personal knowledge. (Order at 19-20.) Defendants' position appears to be that the Court must presume a legitimate penological reason exists based on conjecture alone. But as the very case Defendants rely on

makes clear, "[i]f the inmate presents sufficient evidence to 'refute[ ] a common-sense connection between a legitimate objective and a prison regulation, ... the state must present enough counter-evidence to show that the connection is not so 'remote as to render the policy arbitrary or irrational.'" Ashker v. California Dep't of Corr., 350 F.3d 917, 922 (9th Cir. 2003). Here, Baker did present evidence to refute the need for a guard in the visitation room with him, and, Defendants failed to provide "enough counter-evidence" to support the connection between the claimed penological goal and the intrusion in the visitation room. The Court rejects this as a reason to reconsider its Order.

Defendants also argue that the Court should have ignored the response to Baker's grievance about the attorney visits as a "subsequent remedial measure." (Mot. at 6.) This is an inaccurate description of the evidence. The evidence is not a remedial measure being used to establish liability. It is evidence of what the DOC regulations were at the time and what the supervisor and law librarian believed the standards were at the time. This is not subject to exclusion under Fed. R. Evid. 407.

E.   **Edwards v. Balisok**

Defendants argue the Court erred by allowing Baker to pursue a claim that "necessarily calls into question the validity of Baker's prison disciplinary infraction guilty finding." (Mot. at 6.) Defendants believe that this would "run[] afoul of the Supreme Court's opinion in Edwards v. Balisok, 520 U.S. 641, 644 (1997)." (Id.) Defendants misread Edwards, which concluded that a prisoner may not pursue a § 1983 "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed[.]" Edwards, 520 U.S. at 648. This built on Heck v. Humphrey's conclusion that "a state prisoner's claim for damages is not cognizable under 42

U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." Id. at 643 (quoting Heck v. Humphrey, 512 U.S. 477, 487 (1994)). Here, Baker does not allege any deceit or bias on the part of Lieutenant Richards or challenge the validity of the process he used. Nor does he seek reinstatement of lost good time credits, such that the Court might construe this as an attack on his sentence. That renders the considerations in Edwards and Heck irrelevant. The Court finds no basis to grant reconsideration.

## CONCLUSION

Defendants have failed to identify any basis for reconsideration. The Court DENIES the Motion. The Court also DENIES as MOOT Plaintiffs' Motions to Deny Defendants' Motion for Reconsideration, which are not properly-filed motions permitted by the Local Civil Rules, and were not considered by the Court. (Dkt. Nos. 211, 213.)

The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

Dated May 9, 2024.

Marsha J. Pechman
United States Senior District Judge