The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMALL S. BAKER,<br><br>                              Plaintiff,<br><br>     v.<br><br>TAMMY O'REILLY, et al.,<br><br>                              Defendants. | NO: 2:21-cv-00361-MJP<br><br>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES<br><br>NOTE ON MOTION CALENDAR: NOVEMBER 15, 2024<br><br>ORAL ARGUMENT REQUESTED |

## I. INTRODUCTION

*"Every human being is worth more than the worst thing they've ever done. All life has dignity, guilty life too."* – Helen Prejean

*"Still, the prisoner is a person; still, he or she is part of the family of humankind."* – Justice Anthony M. Kennedy

These truths are lost on Defendants Kathryn Grey, Christine Pratt, Sonia Mills, Camden Crouse, and Lily Harris ("Defendants"), given their actions that this Court has already held present questions of fact that they deliberately violated Jamall S. Baker's ("Baker" or "Plaintiff") First Amendment and Due Process rights. These truths will become empty and hollow if Defendants' arguments as to what remedies Baker has for their conduct are accepted, because according to Defendants, he may not recover compensatory damages for mental and emotional injuries he suffered as a result; or the wages he lost, since the time by which his incarceration would have

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

been shortened had he not been terminated from his job cannot be restored; or punitive damages that would appropriately punish them for their actions and deter them from engaging in such conduct with Baker and other prisoners going forward. According to Defendants, they face no consequences for their actions, other than the inconvenience of being in a lawsuit in which they are defended by the Attorney General at no cost to them, and nominal damages that the State will pay. Those possible "consequences" did not prevent them from doing what they did, nor will they going forward. In essence, according to Defendants, the protections enshrined in the Bill of Rights have no value or meaning when it comes to Baker or other prisoners and can be violated with impunity.

Defendants lost their attempt to avoid liability on the merits when this Court held that questions of fact existed that they deliberately violated Baker's First Amendment and Due Process rights by (1) terminating him from his prison job in retaliation for suing a prison guard and filing other grievances and (2) sitting in the room while he conferred with counsel regarding that lawsuit to eavesdrop on their discussions. Now, they seek a second bite of the apple, seeking the same result by arguing that Baker has no meaningful remedy for their actions. But Defendants are wrong. Under controlling precedent, Baker can recover compensatory damages for the years-long mental and emotional distress caused by the Defendants' multiple violations of his First Amendment rights. Similarly, Baker has a liberty interest in the time by which his incarceration would have been shortened had he not been terminated from his kitchen job, which can only be remedied—in small part—by compensation for the wages he lost. The notion that the Prison Litigation Reform Act ("PLRA") should be construed to preclude punitive damage awards to prisoners has no basis in either that Act or case law interpreting it.

Defendants' motion should be denied, and a jury should decide what consequences Defendants should bear for their actions.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 2

## II. STATEMENT OF FACTS

The Court is already familiar with the facts of this case by virtue of ruling on Jamall S. Baker's Objections to the Report and Recommendation of Magistrate Grady J. Leupold ("R&R"), the Defendants' Objections to the R&R, and related motions ("Order"). Dkt. #207. This response incorporates those facts as supported by the record, and thus will set forth an abbreviated recitation of salient facts.

### A. Baker's Early Life and Conviction.

Baker was born and raised in Oakland, California where he saw and was victim to severe physical and verbal abuse. Baker Decl. at ¶3. As a result, since the age of five, he has suffered from mental health issues and has been seeing counselors since the age of nine. *Id.* At the age of eleven, he began using drugs to help him through his mental health issues. *Id.* As a teenager, Baker continued to use hard drugs, was in and out of juvenile detention, and joined a gang. *Id.* In addition to his mental health issues, he is diagnosed with mental health disorders, including bipolar disorder and schizophrenia, has an irreversible brain injury, and is a victim of sexual assault. *Id.* at ¶¶4-5. Significantly, these issues, disorders, injuries, and assaults have amplified the emotional distress he has suffered due to Defendants' conduct for which they seek to avoid all liability through this motion. *Id.* at ¶¶14-37; Kamjula Decl. at ¶3.

On March 10, 2010, Baker was convicted of first-degree murder, for which he was sentenced to 325 months (approximately 27 years) in prison. Baker Decl. at ¶6. His release date was set for July 8, 2034. *Id.* Based on his conviction and sentence, Baker is eligible for a maximum of 32.5 months (approximately 989 days) of Early Release Time ("ERT")[1] to reduce his total sentence in confinement by that amount. RCW 9.94A.729(2)(c).

Baker is confined at the Monroe Correctional Complex in the Sky River Treatment Center (f/k/a the Special Offender Unit) (the "SRTC"). Baker Decl. at ¶7. The SRTC "provides a facility

---

[1] As discussed below, ERT consists of a combination of Earned Time and Good Conduct Time, both of which can be generated through the work he was discharged from in retaliation for filing a lawsuit against prison guard Jerald Grant.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

to treat/house the many Seriously Mentally Ill (SMI) incarcerated individuals needing a residential level of care."[2]

B.  **Baker's Work History and Defendants' Retaliatory Termination in Violation of Baker's First Amendment and Due Process Rights.**

Washington unequivocally requires state prisoners to work during their incarceration. *See* RCW 72.64.030 ("Every prisoner in a state correctional facility shall be required to work[.]"); *see also* RCW 72.09.460(2) (same); RCW 72.09.010(5) (same). After being on a job waitlist for several months, Baker began working his first prison job working in the kitchen in October 2012. Baker Decl. at ¶11. Shortly after, he was terminated from the kitchen for a serious behavior violation unrelated to his job but rehired less than four months later in the same position where he worked until June 2015. *Id.* at ¶11. At that point, he transferred to a custodial job, which he held until August 2016 when he transferred back to the kitchen and eventually secured a lead role. *Id.* at ¶¶12-13.

In April 2017, Baker was placed in administrative segregation ("ad-seg") for two weeks based on a false report that he was threatening to hurt Officer Jerald Grant. *Id.* at ¶15. He got out of ad seg two weeks later to find that he was moved to a new living unit and that his new boss, Defendant Lily Harris (a co-worker and good friend of Grant's), had put another inmate in his lead role and demoted Baker. *Id.* at ¶17.

Seven months later, on November 8, 2017, Baker filed a § 1983 action against Grant for various constitutional violations. *Id.* at ¶18. It was shortly after this that Harris' retaliatory actions escalated, commencing a campaign of negative evaluations and infractions against Baker to the point where he became suicidal. *Id.* at ¶¶18-27. Baker filed his first grievance against Harris for these discriminatory actions on March 7, 2018 and a second grievance for discriminatory and retaliatory actions on May 1, 2018—the DOC rejected both grievances. *Id.* at ¶19.

---

[2] https://www.doc.wa.gov/corrections/incarceration/prisons/mcc.htm.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Harris' campaign came to a head on June 25, 2018, when she filed an infraction report against Baker falsely accusing him of violating two general rules: rule 103 – failing to follow any oral/written orders, rules, or policies not otherwise included in WAC 137-28-220 ("Rule 103") and rule 353—engaging in disruptive behavior ("Rule 353"). *Id.* at ¶20; WAC 137-28-220. The circumstances of Harris' report, an ostensibly corroborating report filed by another officer, his termination by Harris and Defendant Kathryn Grey ostensibly based on those false reports, and evidence that his discharge was in fact in retaliation for his suit against Grant, are discussed at length in the Order. *See* Dkt. #207. He was discharged without notice or an opportunity to be heard. Baker Decl. at ¶20.

On June 28, 2018, in an active attempt to have his termination reversed, Baker submitted a third grievance against Harris for filing a false infraction against him. *Id.* at ¶21.

On July 1, a hearing officer, after a twenty-minute hearing on Harris' infraction report, found Baker guilty of the violations and retroactively confirmed the termination. *Id.* at ¶22.

The next day, Baker, again, tried to have his termination reversed and filed a fourth grievance against Harris for retaliating against him, which was immediately rejected as a matter for which he could file a grievance. *Id.* at ¶23.

On July 7, 2018, he filed a fifth grievance against her for discrimination, which was rejected by the DOC. *Id.* at ¶24.

On July 28, 2018, he filed a sixth grievance against her based on another officer's admission that he was fired in retaliation for his grievances and lawsuits. *Id.* at ¶25. Despite that grievance being substantiated, the DOC rejected the grievance. *Id.*

On July 30, 2018, he filed a seventh grievance against Harris for intimidating inmates who were witnesses to his termination on June 26, but the DOC did not accept the grievance. *Id.* at ¶26.

Baker then filed a complaint regarding Harris' actions with the Office of the Corrections Ombuds, which issued findings substantiating Baker's grievances, as discussed in the Order. Dkt. #207 at 6; Baker Decl. at ¶27.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (NO. 2:21-cv-00361-MJP) - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

After his termination, Baker was placed on a waiting list for jobs and was not hired until November 8, 2018 as a porter in a maximum custody unit, where he had to be strip-searched up to three times each shift. Baker Decl. at ¶¶28-29. As a victim of sexual abuse, Baker was mentally tortured by these searches, which forced him into resignation in February 2019. *Id.* at ¶¶5, 29. Unable to endure that trauma, Baker was again put out of work until July 2019. *Id.* at ¶30. Since then, Baker has worked and continues to work in a custodial role as well as in special projects roles. *Id.*

As of November 7, 2024, Baker's release date is July 8, 2034. *Id.* at ¶6.

### C. Defendants' Interference with Baker's First Amendment Right to Confer with Counsel.

Having been unable to coerce Baker into dropping his case against Grant by reducing his income and ability to obtain ERT for almost an entire year, they resorted to eavesdropping on his already limited conversations with counsel. From July to December 2019, at Defendant Grey's direction, Defendants Pratt, Mills, and Crouse took turns sitting in on three different meetings Baker had with his then-counsel in his lawsuit against Grant. *Id.* at ¶35. The circumstances of those meetings and evidence that the excuses they offered for doing so were pretext are also discussed in the Order. Dkt. #207 at 7-10, 14-21; *see also* Baker Decl. at ¶¶35-37.

Crouse and Pratt's presence during the last of the three meetings with counsel—Baker's last opportunity to consult with them regarding his case against Grant—was the last straw. Baker was so mentally and emotionally distraught by Defendants' intrusion of his meetings, that he was effectively unable to consult with counsel during that meeting. Baker Decl. at ¶37. He believes his inability to consult with them is why he ultimately lost his case against Grant. *Id.*

### III. STATEMENT OF ISSUES

1. Pursuant to his First Amendment Claim for Retaliation, is Baker entitled to compensation for the mental and emotional damages caused by Defendants without a prior showing of physical injury or the commission of a sexual act? <u>Yes</u>.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 6

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

2.  Pursuant to his First Amendment Claim for Retaliation, is Baker entitled to recover lost wages? <u>Yes</u>.

3.  Pursuant to his claim for violations of his rights under the Fourteenth Amendment, is Baker entitled to recover lost wages? <u>Yes</u>.

4.  Pursuant to his First Amendment Claim for Retaliation, is Baker entitled to punitive damages? <u>Yes</u>.

## IV.  EVIDENCE RELIED UPON

This Response is supported by the pleadings and other papers in the record, including but not limited to, all of the evidence and briefing considered by the Court in conjunction with the Order. It is further supported by the Declarations of Tania Sethi Kamjula ("Kamjula Decl.") and Jamall S. Baker ("Baker Decl.") and all exhibits attached thereto.

## V.  AUTHORITY

Unable to obtain summary judgment on liability for Baker's core claims—infringement of First Amendment and Due Process rights in terminating his kitchen job and in consultation with counsel—Defendants now try another approach to obtain effectively the same result. They claim that they face no consequences for such egregious conduct, because Baker may not recover compensatory or punitive damages, and may recover only nominal damages. Were that the law, a prisoner's constitutional rights would be substantively eradicated. Correctional officers could violate a prisoner's constitutional rights with impunity, risking only the minor inconvenience of a lawsuit for nominal damages defended by the Attorney General. But that is not the law, and the Court should deny this second attempt to evade responsibility.

A.  **Baker Is Entitled to Recover Compensatory Damages.**

   1.  **Baker May Recover Mental and Emotional Damages for First Amendment Claims.**

Defendants argue that Baker is not entitled to recover mental or emotions damages, citing 42 USC § 1997e(e), which states that "no Federal civil action may be brought by a prisoner . . .

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]" That statute, however, does not preclude such recovery based on violations of a prisoner's First Amendment Rights.

It is well-settled law in this Circuit that "§ 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought." *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998); *see also, e.g., Oliver v. Keller*, 289 F.3d 623, 627 n.5 (9th Cir. 2002) ("In *Canell* . . . , we refused to apply § 1997e(e)'s prior physical injury requirement to a § 1983 action alleging violation of a prisoner's First Amendment rights because 'deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from the physical injury he can show, or any mental or emotional injury he may have incurred . . . regardless of the form of relief sought.' . . . . Nothing in our holding today disturbs our prior holding in *Canell*."); *Entler v. Gregoire*, No. 2:12-CV-5141-TOR, 2019 WL 3022190, at *5 (E.D. Wash. July 10, 2019) ("[T]he Ninth Circuit has . . . found that [42 U.S.C. § 1997e(e)] does not apply to First Amendment claims."); *Barstad v. DOC*, No. C14-0523RSL-MAT, 2015 WL 1867082, at *29 (W.D. Wash. Apr. 23, 2015) ("Thus, any claim for damages for emotional or mental harm based on the First Amendment claim . . . is not subject to dismissal under § 1997e(e).").

Thus, that Baker was neither physically injured nor suffered from a sexual act is not dispositive. Under controlling precedent, he is entitled to recover mental and emotional damages suffered at the hands of the Defendants for their multiple violations of his First Amendment Rights by terminating him in retaliation for his multiple grievances and lawsuit against Grant and interfering with his right to consult counsel regarding that lawsuit.[3]

---

[3] That such damages are within the scope of his claims is beyond dispute. Baker described the mental and emotional injuries he suffered at the hands of Defendants in his Complaint. *See* Dkt. #127 at 22. Additionally, he made Defendants aware that he seeks such damages in deposition testimony. *See* Kamjula Decl. at 3. He was not required to identify such damages in initial disclosures, because such disclosures are not required in actions brought by *pro se* prisoners. FRCP 26(a)(1)(B)(iv); *see also, e.g., Preston v. Boyer*, No. C16-1106-JCC-MAT, 2019 WL 5892245, at *1 n.2 (W.D. Wash. Nov. 12, 2019) ("Although plaintiff is now represented by counsel, he was a *pro se* prisoner at the time he initiated this action and was exempted from initial disclosures pursuant to this rule."). Defendants were clearly on notice of such claims; otherwise, they would

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**2.  Baker is Entitled to Recover Past and Future Lost Wages under the First and Fourteenth Amendments.**

**a.  Washington Awards Prisoners with Earned Release Time.**

Next Defendants argue that Baker cannot recover the modest wages he has lost by virtue of the termination because he has no property interest in a prison job. But Washington unequivocally requires prisoners to work during incarceration. *See* RCW 72.64.030 ("Every prisoner in a state correctional facility shall be required to work[.]"); *see also* RCW 72.09.460(2) (same); RCW 72.09.010(5) (same). Washington also unequivocally requires prisoners to be compensated for working these mandated jobs. *See* RCW 72.64.040 ("Where a prisoner is employed at any occupation for which pay is allowed or permitted, or at any gainful occupation from which the state derives an income, the department shall credit the prisoner with the total amount of his or her earnings."); *see also, e.g.,* RCW 72.09.100(2)(f) (class II inmates "shall be paid for their work on a gratuity scale[.]").

Most importantly, it is through such work that Washington prisoners can get ERT, whereby their days in confinement are reduced. ERT consists of the aggregate total of earned time for participation in education or work programs ("Earned Time") and for good behavior during their incarceration, including participation in the education or work programs ("Good Conduct Time"). RCW 72.09.130; RCW 9.94A.729; DOC 350.100(I).

---

not have devoted an entire section of their Motion asking that claims for such damages be dismissed on the grounds stated.

To the extent Defendants argue that Baker's allegations in his Complaint are somehow deficient, the Court should allow him to amend his Complaint accordingly. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (2013) ("Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by inmates. This rule relieves pro se litigants from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them."); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988))).

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

### i. Earned Time

Prisoners participating in work programs are statutorily entitled to Earned Time. RCW 72.09.130; RCW 9.94A.729(1)(a). Each month a prisoner participates in a work program, the prisoner earns 1.11 days of release time. DOC 350.100(III)(A)(1). But an "inmate is not eligible to receive earned early release days during any time in which he or she refuses to participate in an available . . . work program into which he or she has been placed under RCW 72.09.460." RCW 72.09.130(2); *see also* RCW 72.09.460(2) (same); RCW 72.09.460(7) (same). This mandatory loss of Earned Time applies to inmates "terminated from a program assignment for documented negative or substandard performance." WAC 137-30-030(4)(b)(v). Importantly, lost Earned Time *cannot be restored*. *See* DOC 350.100(IV)(A) ("Good conduct time . . . is the only ERT that can be restored.").

### ii. Good Conduct Time

Prisoners are also entitled to earn Good Conduct Time. RCW 72.09.130; DOC 350.100(IV). Only serious behavior violations may result in a denial or loss of Good Conduct Time. *See* WAC 137-28-350(3)(g). Unlike lost Earned Time, lost Good Conduct Time *may be restored*, and restoration of Good Conduct Time "will only be denied if a significant, compelling reason(s) exists." DOC 350.100(IV)(A); DOC 350.100(F)(1)(b).

### b. Baker Has a Statutory Liberty Interest in ERT.

The Supreme Court holds that prisoners such as Baker have a liberty interest in statutorily mandated ERT:

> We have held that the Due Process Clause itself does not create a liberty interest in credit for good behavior, but that the statutory provision created a liberty interest in a "shortened prison sentence" which resulted from good time credits, credits which were revocable only if the prisoner was guilty of serious misconduct. The Court characterized this liberty interest as one of "real substance" and articulated minimum procedures necessary to reach a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution[.]"

*Sandin v. Conner*, 515 U.S. 472, 478-79 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)) (internal citations omitted). So while Baker may have no property interest in his prison job, the

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (NO. 2:21-cv-00361-MJP) - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

relevant Washington statutes create and confer on him a liberty interest in a shortened prison sentence resulting from Earned Time (which may not be credited or restored even if Baker was wrongfully terminated) and Good Conduct Time (which is revocable only if Baker is guilty of serious misconduct).

### c. Baker's Interest in ERT is Subject to Due Process Protections.

Baker's liberty interest in ERT is one of real substance entitled to due process protections. *Sandin*, 515 U.S. at 479; *see also In re Gronquist*, 138 Wn.2d 388, 397 (Wash. 1999) ("A prisoner's statutory right to earn good time credits is a 'protected interest in those credits which prevents their deprivation absent observation of minimum due process requirements.'"). Liberty interests created by statute are "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84. Disciplinary actions which will inevitably affect the duration of a prisoner's sentence invoke the procedural guarantees of the Due Process Clause. *Id.* at 487; *see also, In re McVay*, 99 Wn. App. 502, 507, 993 P.2d 267 (1999) ("Although McVay did not actually suffer loss of good time, McVay did appear in a 'serious infraction' hearing. Therefore, following *Gronquist,* we find that McVay was entitled to minimum due process in that hearing.").

Recognizing and acknowledging a prisoner's statutory liberty interest in ERT, Washington enacted regulations as a rubric for the necessary procedural safeguards. *See generally* WAC 137-28 *et seq.* These regulations include a list of general behavior violations and an *exclusive* list of sanctions for the same, and a list of serious behavior violations and related list of sanctions.

### i. General Behavior Violations and Sanctions

General behavior violations include Rules 103 and 353. *See* WAC 137-28-220. For such violations the DOC may *only* impose one or more of seven limited sanctions: a reprimand/warning, loss of privileges, short-term confinement except for attendance at work, and extra work duty. *See*

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

WAC 137-28-240(2). Notably, this exclusive list does *not* include revocation of ERT or termination from a prison job. Indeed, it actually encourages regular and even additional work furthering prisoners' liberty interests in Earned Time.

### ii. Serious Behavior Violations and Sanctions

Serious behavior violations are exclusively listed in WAC 137-25-030. If a prisoner is guilty of a serious behavior violation, the DOC may deny or revoke Good Conduct Time. WAC 137-28-350(3)(g). Lost Good Conduct Time may be restored after one, three, five, or ten years, subject to the completion of other departmental requirements. DOC 350.100(IV)(A)(2)(d); DOC 350.100(IV)(E). Upon completion of such requirements, restoration of Good Conduct Time "will only be denied if a significant, compelling reason(s) exists." DOC 350.100(F)(1)(b).

### d. Harris Retaliated against Baker by Violating His Right to Due Process.

Defendant Lily Harris' ("Harris") June 25, 2018 infraction report accused Baker of 103 and 353 violations—both general behavioral violations under WAC 137-28-220. If Baker was guilty of these violations (he was not), sanctions are limited to those found in WAC 137-28-240(2), none of which include termination from his prison job. Given the liberty interests at stake, that would require due process: notice, a fair and impartial hearing, and any other right conferred to him under WAC 137-28-285.

On July 1, after about a twenty-minute hearing, the hearing officer found Baker guilty of violating 103 and 353 but did *not* find Baker guilty of any serious behavioral violations. Yet the hearing officer affirmed his termination based on these violations, putting Baker out of work for at least eight months, and depriving him of at least 8.88 days of Earned Time. This was an attempt to make an end run around WAC 137-28-240(2) as this is *not* a sanction permitted for general behavior violations. It violated Baker's First Amendment and Due Process rights.

Thus, Harris' retaliatory actions and violation of the controlling regulations for general behavioral violations effectively deprived Baker of his statutory liberty interest in Earned Time without first providing him with constitutional due process. While a prisoner's due process rights

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

are less stringent than for non-prisoners, they are not so lax as to let such blatant, multi-layered violations be ignored. *See Edwards v. Balisok*, 520 U.S. 641, 647 (1997) ("The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence."). This is especially true considering lost Earned Time cannot be restored. *See* DOC 350.100(IV)(A).

Since Earned Time cannot be restored, Baker's sole remedy for his lost Earned Time must be the compensation he would been paid but for Harris' retaliatory actions. *See* Dkt. #230 at 12 ("By definition, 'compensatory damages' are '[d]amages sufficient in amount to indemnify the injured person for the loss suffered.'" BLACK'S LAW DICTIONARY (9th ed. 2010)). In other words, because Earned Time cannot be restored, the only way to make Baker whole is through compensatory damages for his lost wages.

## B.   Baker May Recover Punitive Damages.

Defendants devote nearly half of their brief to what is likely their biggest monetary risk given the evidence: that of punitive damages, of which Baker has requested at least $75,000. They advanced a lengthy, tortured, word-parsing argument contending, in substance, that in enacting the PLRA, Congress intended to foreclose the award of punitive damages to prisoners in all cases. Their reasoning is that:

- since they are not compensatory in nature, punitive damages must therefore be "prospective relief" under 18 U.S.C. § 3626, because an earlier version of the bill that became the PLRA defined "prospective relief" as all relief other than monetary relief and the final version defined it as all relief other than compensatory relief;
- under 18 U.S.C. § 3626(a)(1), "prospective relief" cannot be awarded unless "necessary to correct the violation of the Federal right of a particular plaintiff . . ." and extends no further than the least intrusive means necessary to correct the violation; and

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

- that punitive damages, by definition, are never "necessary" to "correct" a violation because (1) necessary means essential (according to dictionary definition), (2) punitive damages are not essential because they do not correct the violation (only compensatory damages serve that purpose and anything beyond that is not essential), (3) one cannot "correct" a future error before it happens, (4) punishment is not strictly necessary to remedy a wrong (it serves other purposes of deterrence or retribution), and (5) punitive damages are never the least intrusive means to correct a violation because:
    - compensatory damages (which Defendants claim are not available to Baker under the PLRA) are the primary mechanism for that purpose;
    - the availability of attorneys' fees, the prospect of the heavy toll of litigation, and the possibility that they might not be indemnified by the State for their conduct, provides assurance that State agents will not deliberately ignore a prisoner's rights (which clearly did *not* have that effect in this case and never would if Defendants' arguments about Baker's available remedies were the law);
    - "prospective relief" must be that necessary to correct the violation of a particular plaintiff's federal rights, and punitive damages are aimed at protecting inmates generally through deterrence, not at protecting a particular plaintiff; and
    - the PLRA requires compensatory damages awarded first be applied to outstanding restitution orders, but is silent regarding punitive damages. Thus, they claim, Congress never intended to authorize punitive damages for prisoner lawsuits, and a punitive damage award would be a windfall to the prisoner.

### 1. Punitive Damages are Not "Prospective Relief."

Of course, in passing the PLRA, Congress was undoubtedly aware that punitive damages can be awarded for constitutional violations. If it intended to eliminate that remedy for prisoners, it could easily and would have so stated expressly in a law captioned "Prison Litigation Reform Act." No such pronouncement exists in any context.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 14

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Further demonstrating the fallacy of Defendants arguments, Defendants fail to cite *any* authority whereby punitive damages are considered "prospective relief" under 18 U.S.C. § 3626, or otherwise denying punitive damages under the PLRA for the reasons Defendants advance in their brief. Section 3626, as currently revised, was enacted in November 1997. In the nearly 30 years that have since passed, not *one* court in this Circuit has considered, much less accepted, these arguments. Indeed, numerous courts have continued to hold that "[a] jury may award [a prisoner] punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Wilson v. Poor*, No. C19-5920 BHS-TLF, 2023 WL 22057, at *4 (W.D. Wash. Jan. 3, 2023). Thus, where a genuine issue of fact exists as to a defendant's intentions in a prisoner's First Amendment Retaliation claim (as this Court held exists in this case), summary judgment as to punitive damages is improper. *Id.*; *see also, e.g., Entler*, 2019 WL 3022190, at *6 ("Given the evidence and argument proffered at this stage of the proceeding, [including allegations that defendants' actions were reckless or intentional,] genuine issues of material fact remain. Summary judgment on the punitive damage issue is denied at this time."); *Barstad v. DOC*, No. C14-0523RSL-MAT, 2015 WL 1867082 (W.D. Wash. Apr. 23, 2015) ("Punitive damages are available in a § 1983 action where a defendant's conduct 'is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983))).

Additionally, the ordinary meaning of "prospective relief" also dispels Defendants' arguments. "Prospective" means "effective or operative in the future." *Prospective*, BLACK'S LAW DICTIONARY (9th ed. 2010). "Relief" means "the redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court." *Relief*, BLACK'S LAW DICTIONARY (9th ed. 2010). Therefore, "prospective relief" would encompass, for example, temporary injunctions, permanent injunctions, specific performance, and consent decrees but not

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 15

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

compensatory damages, private settlement agreements, punitive damages, or nominal damages. That is the only reasonable interpretation of that term.

### 2. Even if Punitive Damages are "Prospective Relief," They are Necessary to Correct Defendants' Actions.

Even if punitive damages *were* deemed "prospective relief," questions of fact exist as to whether such relief is necessary to correct the Defendants' callous disregard of Baker's First Amendment and Due Process rights. Certainly, that would be the case if Defendants' arguments as to the availability of compensatory damages for mental and emotional distress and for lost wages were accepted.

The risks of litigation, attorneys' fees, and lack of indemnification did not dissuade Defendants from terminating Baker from his kitchen job in retaliation for suing Grant and filing other grievances or from sitting in the same room *three times* to eavesdrop on his conversations with counsel about the Grant lawsuit. If punitive damages are also not an available remedy, then what consequence would Defendants (or any other State agent) face for such conduct? None. Prisoners' constitutional rights would have no meaning and could and would be violated with impunity. Certainly, the Defendants' long campaign against Baker would continue unabated and likely heightened.

Similarly, whether punitive damages would be necessary to correct the Defendants' actions is a question of fact even though, as made clear above, Baker *is also* entitled to recover compensatory damages. His wage loss, as a prisoner, is minimal in comparison to such claims by non-prisoners. What a jury would award for mental and emotional damages may not be adequate to correct the violation, either. It would be for the jury to decide based on the facts, after determining what compensatory damages to award, whether an additional award of punitive damages is warranted based on the evidence, and necessary to appropriately punish the Defendants and deter such conduct in the future in regard to Baker (or any other prisoner).

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 16

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Construing all facts in Baker's favor, punitive damages is not be an issue the Court may decide as a matter of law. As this Court previously recognized, there are genuine issues of material fact with respect to Defendants' intentions. Dkt. #207 at 4-5, 12-14; *see also* Dkt. #127 at 5-14, 17-19, 22. Defendants are not entitled to summary judgment that Baker may not recover punitive damages.

## VI. CONCLUSION

Baker is entitled to recover more than nominal damages, but also compensatory damages for mental and emotional damages, lost wages, and punitive damages. The amounts of Baker's recovery for each of these categories of damages is a material question of fact for the jury. The Court should deny Defendants' Motion.

DATED this 8th day of November, 2024.

BYRNES KELLER CROMWELL LLP

By /s/ *Tania Sethi Kamjula*
Tania Sethi Kamjula, WSBA # 61732
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
tkamjula@byrneskeller.com
*Attorney for Plaintiff Jamall S. Baker*

I certify that this memorandum contains 5,818 words, in compliance with the Local Civil Rules.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## CERTIFICATE OF SERVICE

On this 8th day of November, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ *Tania Sethi Kamjula*
Tania Sethi Kamjula, WSBA # 61732

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:21-cv-00361-MJP) - 18

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000