UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMALL S. BAKER, | CASE NO. C21-361 MJP |
| Plaintiff, | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION |
| v. | |
| TAMMY O'REILLY, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff's Motion for Sanctions for Spoliation of Evidence. (Dkt. No. 258.) Having reviewed the Motion, the Opposition (Dkt. No. 263), the Reply (Dkt. No. 268), the Surreply (Dkt. No. 272), and all supporting materials, and having held oral argument on June 2, 2025, the Court GRANTS in part the Motion.

**BACKGROUND**

Plaintiff Jamall S. Baker is incarcerated at the Monroe Corrections Center—Special Offender Unit (MCC-SOU) and he brings claims under 42 U.S.C. § 1983 against a number of current and former Department of Corrections employees at MCC-SOU. Baker alleges that he

suffered a "campaign [of] harassment" on account of advocating for himself and others at MCC-SOU, particularly through the grievance process and in litigation before this Court, and that he had his First Amendment and Fourteenth Amendment Due Process rights repeatedly infringed. (Fifth Amended Complaint (FAC) ¶¶ 13-15 (Dkt. No. 127).) He pursues First Amendment and Due Process claims arising out of: (1) being terminated from his kitchen job as retaliation for lodging grievances and litigating against correctional officers at MCC-SOU; and (2) being unable to meet privately with counsel (FAC ¶¶ 74-91).

There are two sets of events central to Baker's case. First, on June 25, 2018, Baker claims he was terminated from his job in the inmate kitchen based on a false general infraction report authored by Defendant Lily Harris. Harris issued the general infraction based on her belief that Baker threatened her by getting in her face and being "verbally pugnacious." (Deposition of Lilly Harris at 110-12 (Exhibit 1 to the Declaration of Tania Kamjula (Dkt. No. 259-1); General Infraction Report (Dkt. No. 180 at 52-53).) As a result of this allegation, Baker lost his job in the kitchen, after DOC held a disciplinary hearing on July 1, 2018 during which Baker disputed being loud, argumentative, or disrespectful. (Exhibit 2 to the Declaration of Jamall S. Baker at 2 (Dkt. No. 234-2).) Second, during three meetings with his attorneys on July 25, October 28, and December 12, 2019, Baker claims that Defendants Sonia Mills, Camden Crouse, and Christine Pratt (at the direction of Defendant Katherine Grey) violated his right to meet in private with his counsel.

To help prove his claims, Baker has sought video and audio recordings of these events, and a grievance hearing held about the kitchen-related infraction. Baker issued discovery requests seeking this information back in June 2022. (Kamjula Decl. Ex. 10 (RFP No. 6) (Dkt. No. 259-10).) But it was not until July 2024 that Defendants' counsel notified Baker that no

video recordings of the incidents were saved. (Id. Ex. 12 (Dkt. No. 259-12).) Defendants have also confirmed that no audio recordings would have been made of the incidents and that no recording of any kind was made of the grievance hearing. (See Declaration of Dianna Rule ¶¶ 5-8 (Dkt. No. 265); Declaration of Adbussalaam Ahmad ¶¶ 3-4 (Dkt. No. 264).) Plaintiff now moves for sanctions, contending that Defendants intentionally spoliated this evidence. To unpack the Motion, the Court reviews: (1) facts relating to each Defendants' knowledge that Baker was likely to litigate claims related to the incidents; (2) information regarding video and audio recordings at MCC and DOC retention policies; and (3) DOC policies applicable to Defendants' duty to preserve recordings.

**A.    Notice of Likely Litigation Arising out of Each Incident**

As to the June 25, 2018 kitchen infraction Baker provided several forms of notice of his intention to commence litigation. According to Correctional Officer Hoskins, who was present during the incident, Baker told Defendant Harris and others at the scene that "he 'will be putting my name down' and that he 'will be suing everybody.'" (Baker Decl. Ex. B at 4 (Dkt. No. 234-2 at 4).) Baker also filed at least six grievances by July 30, 2018, complaining about what he deemed to be officer misconduct and a false infraction that should be investigated. (Baker Decl. ¶¶ 21, 23-26.) In one of these grievances, Baker wrote that Harris' conduct was "retaliation based on my litigation efforts" in a case before this Court and he would "be asking the District Judge to allow me to file a supplemental complaint in the above stated case." ("Offender Complaint" dated July 15, 2018 (Dkt. No. 77 at 102).) Baker's grievances were all rejected. But the Office of Corrections Ombuds (OCO) ultimately conducted a review of the incident and the administrative processing of Baker's grievances. The OCO found substantial flaws in both the handling of the grievances and the investigation. In particularly, the OCO Report noted that

1    "[v]ideo review for this case could have identified the actions as they occurred between [Baker]

2    and the . . . staff during the 06/25/2018 incident" and staff had not identified any reason why

3    they did not request the video to be preserved. (OCO Report at 4-5 (Dkt. No. 180 at 41-42).) The

4    OCO Report also noted that the MCC investigator stated she "'had never been trained to conduct

5    a staff misconduct investigation before'" and "had not thought  to make a request for video." (Id.

6    at 41-42.) The OCO noted that "[m]ost DOC facility video is available for approximately 30

7    days" and that "[v]ideo review for this case could have identified the actions as they occurred

8    between [Baker] and the CI staff during the 06/25/2018 incident." (Id. at 42.) And Hoskins

9    confirmed in his deposition that he was aware cameras were being used to monitor the area and

10   that video could be useful to corroborate facts about an incident. (Hoskins Dep. at 61 (Kamjula

11   Decl. Ex. 2 (Dkt. No. 260-1)[1].)

12           As to the first meeting with counsel in July 25, 2019, Baker contends that he verbally

13   raised his objections to Defendants Mills' and Crouse's presence during. (See Dkt. No. 180 at

14   103) (Baker grievance noting that he complained to Defendant Crouse that his presence during

15   the July 25th meeting was improper).) As to the October 28, 2019 meeting, Baker voiced his

16   objections to Mills' presence at the time, and he filed a grievance on November 18, 2019. (Id.;

17   Kamjula Decl. Ex. 6 (Dkt. No. 259-6).) But Baker withdrew his complaint as of November 22,

18   2019. (Kamjula Decl. Ex. 6.) As to the December 12, 2019 attorney visit during which Crouse

19   and Pratt sat in the visitation room, Baker filed a written grievance on December 28, 2019. (Dkt.

20   No. 180 at 3.) In this grievance, he stated that Defendant Crouse had infringed on his attorney

21   visit and First Amendment rights and notified Crouse that "I am going to litigate this issue."

22   

23   _____
     [1] Though this record has been sealed, the Court does not consider the cited testimony necessary
     to be kept sealed, as it is generalized and far afield of the concerns that justify sealing the
24   materials.

1    (Dkt. No. 180 at 103.) He made the same complaint against Defendant Pratt in a second

2    grievance, stating "[s]he will be held to answer in court." (Dkt. No. 180 at 104.) The grievance

3    coordinator rejected both grievance, telling Baker to combine them and specify which part of the

4    DOC Policy was violated. (Id. at 103-04.) Baker then filed a written grievance on January 13,

5    2020, making the same complaints about both Crouse and Pratt, stating "this[,] my friend[,] is

6    being litigated" as the "suggested remedy." (Dkt. No. 180 at 101.) Baker filed another grievance

7    on January 23, 2020 voicing his same complaints and stating again "I am litigating this issue."

8    (Dkt. No. 180 at 87.) Ultimately, however, Baker then agreed to withdraw the grievance

9    provided "this does not happen again." (Id.) But he made specific mention that "it was explained

10   to me by Mrs. Grey 'she spoke with the parties involved and they agreed not to do it again.'"

11   (Id.) The reference to "parties involved" includes Defendants Pratt and Crouse.

12   **B.    Recording of Incidents and DOC Retention Policies**

13         Defendants have admitted that neither they nor the Department of Corrections, which is

14   not a party, has preserved any recording of the events at issue. According to Defendants, no

15   audio recording was made of any incident, and any video recordings of the kitchen incident or

16   attorney visits were not preserved. (Ahmad Decl. ¶¶ 3-4; Rule Decl. ¶¶ 4-6.) And Defendants did

17   not make any recording of the hearing on the kitchen-related infraction. (Rule Decl. ¶ 8.)

18         Defendants claim that no recordings were saved because Baker did not specifically and

19   timely request the videos be saved. According to a DOC representative, videos are only available

20   for thirty days before being overwritten. (Ahmad Decl. ¶ 4.) The representative claims that

21   videos will only be preserved when requested by an inmate through a grievance, by the captain's

22   office, the grievance office, or the litigation liaison office, or if it is "requested for a litigation

23   hold." (Id. ¶ 5.) Defendants have confirmed that "[s]ince security videos are written over after 30

24

1    days, the video from [these] date[s] no longer exist[]." (Rule Decl. ¶¶ 4-5.) And according to a

2    Legal Liaison Officer, no recording of the kitchen-related infraction hearing was made because

3    only "serious infraction hearings are audio recorded" not "general infraction hearing. (Id. ¶

4         Defendants also claim that no recordings were made because none of the incidents rose to

5    a level that required the recordings to be saved. A Legal Liaison Officer for DOC claims that the

6    30-day retention of surveillance videos is governed by the State Government General Records

7    Retention Schedule, GS 25003. (Declaration of Dianna Rule ¶ 3.) According to the Schedule in

8    effect in 2018 and 2019, videos of security monitoring where there is no "security incident" must

9    be "Retain[ed] for 30 days after date record created or until determined that no security incident

10   has occurred, whichever is sooner then Destroy." (Ex. 1 Rule Decl. at 64 (GS 25003) (Dkt. No.

11   265-1 at 65) (emphasis omitted).) But for "security incidents [and] data/privacy breaches" videos

12   must be "Retain[ed] for 6 years after matter resolved then Destroy[ed]." (Id. (emphasis omitted).)

13   According to the Legal Liaison Officer, "no request was made to preserve the videos before

14   litigation commenced because none of the incidents rose to level requiring retention." (Rule

15   Decl. ¶ 6.) According to the Officer, "[v]ideos . . . are generally retained if there was a use of

16   force, fight or assault," but "[n]one of the incidents in question involved a use of force, fight, or

17   assault." (Id.) As counsel for Defendants confirmed at oral argument, this statement is not based

18   on any statute, regulation, or formal policy.

19        Defendants did not timely disclose to Baker that there were no audio or video recordings

20   made or retained of the events at issue. Although Baker served a request for production of the

21   video and audio recordings in June 2022, while he was pro se, it was not until July 2024 that

22   Defendants' counsel informed Baker's pro bono counsel that no such records were saved or

23   available. (Kamjula Decl. Exs. 10 & 12 (Dkt. No. 259-10, -12).) In addition, Defendants' counsel

24

1  informed the Court at the hearing on this Motion that he did not issue a litigation hold until

2  February 2022, despite being involved in the matter in August 2021. Counsel did not provide a

3  cogent reason for this delay, but instead suggested that his late litigation hold had no impact on

4  the present Motion because the videos had already been destroyed before the lawsuit was started.

5        Baker highlights various policies and rules that apply to DOC recordings. First, Baker

6  notes the Department of Corrections Records Retention Schedule requires DOC to keep

7  "incident reports" for six years, including "[r]ecords relating to the summary and circumstances

8  of any reportable incident in any facility" which includes "Recordings of incidents (e.g. tapes,

9  CDs, DVDs)." (Kamjula Decl. Ex. 7 at 5 (Dkt. No. 259-7 at 6).) Baker also highlights a records

10 retention schedule issued by the Secretary of State for Law Enforcement, specify that

11 "[r]ecordings, created as security measures, which do not contain an incident identified by an

12 inmate, agency personnel, or pending public disclosure request" must be retained for 60 days

13 "after date of recording then [d]estroy[ed]." (<u>Id.</u> Ex. 8 at 8 (Dkt. No. 259-8 at 8) (emphasis

14 omitted).) But "[r]ecordings, created as security measures, which do contain an incident

15 identified by an inmate, agency personnel, or pending public disclosure request" must be kept

16 "until exhaustion of appeals process then [d]estroy[ed]." (<u>Id.</u> (emphasis omitted).) And records

17 related to any investigation into employee conduct must be retained for six years. (<u>Id.</u> at 9.)

18 Lastly, Baker notes that a General Records Retention Schedule that Defendants and the Legal

19 Liaison Officer has cited. (<u>See id.</u> Ex. 9; Rule Decl. Ex. 1.)

20 **C.    DOC Policies Applicable to Defendants**

21       DOC's policies also impose duties on its employees to preserve evidence, including

22 audio and video recordings, "related to litigation when it is known that litigation has been

23

24

1    initiated or is anticipated." (DOC Policy 130.200(V)(A) (Kamjula Decl. Ex. 15) (Dkt. No. 259-

2    15).) The Policy provides some non-exclusive examples of anticipated litigation:

3           Knowing that litigation has been initiated or is anticipated may include, but is not limited
            to:

4
5                   a.    Receiving a Summons and Complaint or other legal pleading by personal
                          service, by U.S. Mail requesting a waiver of service, or by other means.

6                   b.    Being informed that a potential plaintiff/claimant has taken substantial
                          steps toward filing a lawsuit/tort claim or that a tort claim has been filed.
7
8                   c.    Being involved in an administrative complaint process (i.e., Internal
                          Discrimination Complaint, Equal Employment Opportunity Commission,
                          Human Rights Commission, or Board of Industrial Insurance Appeals).
9
10                  d.    Being informed through the chain of command or the Attorney General's
                          Officer, in writing, to preserve documents related to litigation.

11   (Id.) Defendants maintain that this policy was not triggered by Baker's threat of litigation,

12   particularly because "it is common for incarcerated individuals to imply they are going to take

13   legal action or threaten to file suit against the Department or its employees." (Defs. Opp. at 10

14   (citing Declaration of Carol Smith ¶ 7 (Dkt. No. 266)).) Defendants highlight the fact that

15   between 2012 and May 5, 2025, Baker has filed 314 resolution requests and appealed 28 of them

16   through the grievance process. (Smith Decl. ¶ 10.) Of these resolution requests, he specifically

17   noted legal action would be forthcoming in 50 of them. (Id. ¶ 11.) But, as Baker points out, he

18   has litigated many cases arising out of his incarceration, including at least six cases filed in this

19   Court since 2017. (Reply at 4 (collecting cases).)

20                                        **ANALYSIS**

21   **A.    Legal Standard**

22          The obligation to preserve relevant evidence attaches when litigation is "pending or

23   reasonably foreseeable." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

24

1    This duty "may arise even before litigation is formally commenced." <u>Apple Inc. v. Samsung</u>

2    <u>Elecs. Co.</u>, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012) "[T]rial courts in this Circuit generally

3    agree that, '[a]s soon as a potential claim is identified, a litigant is under a duty to preserve

4    evidence which it knows or reasonably should know is relevant to the action.'" <u>Id.</u> (quoting <u>In re</u>

5    <u>Napster, Inc. Copyright Litig.,</u> 462 F. Supp. 2d 1060 at 1067 (N.D. Cal. 2006)).

6         The Federal Rules provide specific remedies for spoliation of evidence over which a

7    party had a duty to preserve. As amended in 2015, Rule 37(e) provides:

8         If electronically stored information that should have been preserved in the anticipation or
          conduct of litigation is lost because a party failed to take reasonable steps to preserve it,
9         and it cannot be restored or replaced through additional discovery, the court:

10        (1) upon finding prejudice to another party from loss of the information, may order
          measures no greater than necessary to cure the prejudice; or

11
          (2) only upon finding that the party acted with the intent to deprive another party of the
12        information's use in the litigation may:

13             (A) presume that the lost information was unfavorable to the party;

14             (B) instruct the jury that it may or must presume the information was unfavorable
               to the party; or

15             (C) dismiss the action or enter a default judgment.

16   FED. R. CIV. P. 37(e).

17        As Rule 37 makes clear, "if a specified loss of 'electronically stored information' occurs,

18   then the court 'may' impose certain sanctions upon making the findings required, respectively,

19   under paragraph (1) or paragraph (2)." <u>Gregory v. State of Montana</u>, 118 F.4th 1069, 1078 (9th

20   Cir. 2024). "[W]hen such a covered loss of information occurs, the court must make the specified

21   findings required by paragraphs (1) or (2) before it may impose a sanction, and those paragraphs

22   require different findings depending upon the nature and severity of the sanction." <u>Id.</u> Any

23   sanction under paragraph (2) requires a finding of an intent to deprive the other part of the use of

24

the lost information. Id. at 1080. "[T]he intent required by Rule 37(e)(2) is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." Id. (citation and quotation omitted).

As to prejudice, this "inquiry looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006) (considering spoliation under Rule 37 before it was amended in 2015).

**B.    Defendants Spoliated Evidence**

Baker asks the Court to impose sanctions on Defendants under Rule 37(e) for spoliating evidence related to the incidents at issue in this case. The Court agrees in part. Below, the Court reviews the evidence showing how certain Defendants had a duty to preserve evidence, how their failure to preserve evidence has prejudiced Baker, and what the proper remedy should be.

**1.    Duty to Preserve**

The Court finds sufficient evidence that Defendant Harris had a duty to preserve recordings of the kitchen incident and Defendants Pratt and Crouse had a duty to preserve recordings related to the December 2019 attorney visit.

As to the kitchen incident, Defendant Harris was on notice of a duty to request and preserve video evidence. During the incident itself, Baker told Harris that he "'will be suing everybody.'" (Baker Decl. Ex. B at 4 (Dkt. No. 234-2 at 4).) Baker then followed up on his statement by filing no fewer than six grievances in the days and weeks after the incident. In one of the grievances, for example, he wrote that Harris' conduct was "retaliation based on my litigation efforts" in a case before this Court and the "will be asking the District Judge to allow me to file a supplemental complaint in the above stated case." ("Offender Complaint" dated July

1  15, 2018 (Dkt. No. 77 at 102).) Given the nature of Baker's allegations against Harris and his

2  stated desire to pursue litigation against her, Harris had more than sufficient notice that litigation

3  as anticipated. And she had the ability to preserve the video, as Baker made the threat of

4  litigation clear within thirty days of the incident before DOC destroyed the recording. Under

5  DOC's policy, Harris owed a duty to request and preserve the evidence. This is consistent with

6  the OCO Report's finding that video evidence should have been kept given the nature of the

7  incident and the grievances Baker filed. (Dkt. No. 180 at 40-41.) While the OCO Report focuses

8  more acutely on the MCC investigator's failure to conduct a competent investigation, it makes

9  clear that all involved should have sought to preserve the evidence.[2] (See id.) Outside of DOC

10 policy, Harris generally owed a duty to preserve the evidence because it was reasonably

11 foreseeable that litigation would arise. See Zubulake, 220 F.R.D. at 216. It was reasonably

12 foreseeable given that Baker has frequently litigated claims arising out of his incarceration, he

13 had a lawsuit pending in this Court against MCC guards at the time of the incident, and he

14 alleged that Harris retaliated against him because of that pending lawsuit. (See Reply at 4

15 (cataloging Baker's actions filed in this Court from 2107 to the present).) And, more importantly,

16 Baker made clear in his grievances that he would sue Harris, and that he even intended to add his

17 claims in the lawsuit that was then pending. And given that Baker is limited to only certain jobs

18 and that the kitchen job was highly desired, Harris should have realized that his termination from

19 the kitchen job would increase the likelihood that Baker would sue. (See Baker Decl. ¶¶ 10, 28-

20

21

22 [2] The Court further notes that the investigator to Baker's grievance was assigned within thirty days of the incident, meaning that the video evidence was available. (See Dkt. No. 180 at 31.)

23 But, as the OCO Report noted, the investigator "had not thought to make a request for video," and apparently she "'had never been trained to conduct a staff misconduct investigation before."

24 (Dkt. No. 180 at 41-42.)

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS FOR** SPOLIATION - 11

1  30 (Dkt. No. 234).) These facts demonstrate that Harris had a duty to preserve the documents

2  even separate from the specific DOC policy.

3        DOC itself should have preserved evidence of the kitchen incident. First, as the OCO

4  Report noted, the investigator should have requested video, and could have done so before the

5  video was destroyed because they were assigned within 30 days of the incident. (See Dkt. No.

6  180 at 31, 41-42.) Indeed, as an "outcome" of the OCO Report, "DOC added retention of

7  perishable evidence – audio and video – to the Grievance Investigator's Checklist and included it

8  as part of the training that all persons assigned to conduct grievance investigations are required

9  to receive." (Dkt. No. 180 at 50.) This determination clearly highlights the fact that the video

10  evidence here should have been preserved and would have been preserved had DOC properly

11  trained its staff. Second, General Records Retention Schedule GS 25008 obligated DOC to

12  preserve evidence of the interaction because it qualified as a "security incident" under the

13  Schedule. Under the Schedule, records "documenting a security incident[s]" include videos and

14  they must be kept for six years. (Dkt. No. 259-9 at 5.) The Schedule does not define "security

15  incident" and the Parties have not pointed to any statute or regulation that does. Defendants rely

16  on the MCC Legal Liaison Officer, who believes that a "security incident" must include a "use

17  of force, fight, or assault." (Rule Decl. ¶ 6.) But, as Defendants acknowledged at oral argument,

18  this definition is based only on the Liaison Officer's belief, not a written policy, statute, or

19  regulation. Defendants have provided no reason why this standard should apply. But even if the

20  Court accepts that a "security incident" must including a use of force, fight, or assault, the

21  kitchen incident here qualifies as a "security incident." As Harris told a DOC investigator shortly

22  after the incident, Baker's "behavior became a security concern that required him to be

23  return[ed] to his unit." (See Grievance Investigator Report (Dkt. No. 77 at 126).) Officer Hoskins

24

1   similarly confirmed that Baker "was being aggressive towards staff and argumentative." (Id.)

2   And, more recently, Harris testified that Baker threatened her with his body language, and stood

3   one step away from her face, which could well be construed as an assault. (Harris Dep. at 109-

4   13, 119.) This shows that Harris herself believed that Baker had assaulted her—making her fear

5   for her safety by aggressively confronting her in her face—thus triggering the duty to keep the

6   materials for six years under the Schedule GS 25008. While the Court is aware that DOC is not a

7   party to this case, the Court finds it relevant to note that it had a duty to preserve and that it

8   similarly failed in that duty. As the District of Arizona found in a similar case, a department of

9   corrections has a unique relationship to claims brought against guards and video surveillance

10  footage. Pettit v. Smith, 45 F. Supp. 3d 1099, 1106 (D. Ariz. 2014). The Court in Pettit explained

11  that unlike a truly disinterested third-party, a department of corrections has responsibility to train

12  the employees, and it has the sole custody and control over most of the relevant information,

13  such as surveillance materials. Id. The same facts are true here, and DOC should have retained

14  the videos. The Court considers this information relevant and a secondary reason why Baker has

15  been wrongly deprived of the video evidence. But in fashioning the remedy, the Court considers

16  only the individual Defendants' failure to preserve the video evidence.

17      Second, as to the December 2019 attorney visits, both Defendants Pratt and Crouse had a

18  duty to preserve the video footage. Baker timely filed a grievance against both individuals and

19  put them on notice that he intended to litigate the issue. In his grievance against Defendant

20  Crouse, Baker noted that Crouse had infringed on his attorney visit and First Amendment rights

21  and notified Crouse that "I am going to litigate this issue." (Dkt. No. 180 at 103.) He made the

22  same complaint against Defendant Pratt in a second grievance, stating "[s]he will be held to

23  answer in court." (Dkt. No. 180 at 104.) This was sufficient notice of Baker's intent to pursue

24

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS FOR** SPOLIATION - 13

litigation that should have prompted both Crouse and Pratt to request the video be saved. Baker also filed a written grievance on January 13, 2020, reaffirming that the issue "is being litigated," (Dkt. No. 180 at 101), which he followed up on January 23, 2020 stating that "I am litigating this issue" (Dkt. No. 180 at 87). And while Baker agreed to withdraw the grievance, the video itself should have already been preserved and retained when he made clear his intent to sue. His subsequent statement that he would withdraw the grievance should have had no impact had the video been properly saved in the 30-day window. And, as is clear, Baker did make good on his threat to file suit.

As to the first two visits, the Court finds that Defendant Mills was not on notice that Baker intended to file suit. While Baker verbally objected to Mills' presence during the July 2019 visit and filed a grievance after the October 2019 visit, he never clearly indicated his intent to pursue litigation. (See Dkt. No. 180 at 103) (Baker grievance noting that he complained to Defendant Crouse that his presence during the July 25th meeting was improper); Kamjula Decl. Ex. 6 (Dkt. No. 259-6).) That is largely because Baker withdrew his grievance four days after he filed it, which suggested that litigation was unlikely to ensue. (Kamjula Decl. Ex. 6.) As such, the Court does not find that Mills owed a specific duty to retain the video footage without a clear indication that Baker intended to file suit.

As to lack of a recording of the July 1, 2018 grievance hearing, Baker has failed to show that any of the named Defendants should have recorded the event and failed to do so. First, he has not alleged that Harris or any named defendant had a duty to make a recording of the hearing. He was given only a general infraction and DOC policy specified that audio recordings were not to be made—only for serious infractions. (See DOC Policy 460.00(III)(D) ("General infraction hearing will not be audio recorded"); (IV)(G)(5) (Dkt. No. 265-1 at 160, 163).) As

1  such, the Court does not find a duty to have made a recording in the first instance, such that any

2  of the defendants had a duty to preserve a record.

3      Lastly, the Court rejects Defendants' argument that Baker had to specifically indicate a

4  request that these individuals preserve video evidence in his grievances for a duty to attach. Such

5  a requirement cannot be squared with DOC Policy 130.200(V)(A), which contains no such

6  requirement, or the duty to retain ESI more generally. As the OCO Report makes clear, video

7  evidence involving claims of retaliation is particularly important and it should always be saved.

8      **2.    Prejudice**

9      Having found these three Defendants had a duty to preserve the videos, the Court must

10  consider under Rule 37(e) whether there has been any prejudice to Baker. The Court here finds

11  prejudice.

12      As to the kitchen incident, Baker will be greatly prejudiced without the video evidence.

13  Baker's claim turns decisively on his credibility and that of his witnesses who present strikingly

14  different views on what occurred from Harris and Hoskins. Given the fact that Baker and his

15  witnesses bear a stigma as incarcerated individuals, and Baker suffers from serious mental health

16  issues, it is exceedingly likely that their credibility will be questioned more closely by the jury

17  than Harris's and Hoskins, who are current or former State employees. As the OCO Report itself

18  acknowledged, "retaliation is often difficult to prove in a corrections setting and that lack of

19  evidence does not mean retaliation did not occur." (Dkt. No. 180 at 40.) This recognition

20  highlights the bias that is likely to attach to inmate complaints about staff. And the OCO's

21  Report explains the prejudice Baker faces because the video "could have identified the actions as

22  they occurred between the complainant [Baker] and the CI staff [Harris] during the 6/25/18

23

24

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS FOR** SPOLIATION - 15

1    incident." (Id. at 41.) Without neutral evidence of the incident, the jury has been deprived of

2    material, relevant evidence whose absence prejudices Baker.

3        As to the missing video from the December attorney visit, Baker will also be prejudiced.

4    Although Defendant Crouse admits he was in the room, that alone does not resolve the issue.

5    (See Dkt. Nos. 163.) There remain disputes about just how close the guards were and where each

6    individual was positioned. And while Baker's former attorneys may be able to testify, the one

7    lawyer who has been deposed does not recall how far away the guards were. Video evidence

8    would greatly assist the jury in understanding the scene as it unfolded. And while there would

9    not be audio, the video itself would be extremely helpful to Baker to set the physical setting in a

10   neutral fashion without any question of his credibility and to address the impact of time on

11   fading memories. The Court thus finds prejudice from this absence video recording.

12       **3.    Sanctions**

13       The Court finds sanctions proper under Rule 37(e)(1), given the evidence of a breach of

14   the duty and prejudice. But absent from the record before the Court is any evidence of

15   intentionality necessary to impose stiffer sanction under Rule 37(e)(2). See Gregory, 118 F.4th at

16   1080. At most, it would appear that Defendants Harris, Crouse, and Pratt failed in their duties to

17   preserve the video, but did not do so intentionally or for a malicious purpose. As the OCO report

18   noted, it appears that DOC employees were not well informed on their duties to preserve and

19   request evidence. As such, sanctions here fall only within Rule 37(e)(1).

20       Under Rule 37(e)(1), "Once a finding of prejudice is made, the court is authorized to

21   employ measures 'no greater than necessary to cure the prejudice.'" Fed. R. Civ. P. 37, Adv.

22   Comm. Note (2015 Am.). The Advisory Committee notes explain:

23           In an appropriate case, it may be that serious measures are necessary to cure prejudice
             found by the court, such as forbidding the party that failed to preserve information from

24

putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies. Care must be taken, however, to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation. An example of an inappropriate (e)(1) measure might be an order striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense in the case. On the other hand, it may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence

Fed. R. Civ. P. 37, Advisory Committee Notes.

Here, the Court finds that a proper sanction is for the Court to instruct the jury that video evidence of the kitchen incident and the December 2019 visit were made, that Defendants Harris, Crouse, and Pratt had respective duties to preserve videos of both incidents, and that they failed to do so. Specifically, as to Defendant Harris, the Court will instruct the jury that: (1) video recordings of the June 25, 2018 incident were made; (2) Defendant Harris had a duty to preserve the video recordings; (3) Defendant Harris failed to preserve the video recordings; and (4) the jury can consider these facts during their deliberation. And as to both Crouse and Pratt, the Court will instruct the jury that: (1) video recordings of the December 12, 2019 attorney visit were made; (2) Defendants Crouse and Pratt Harris had a duty to preserve the video recordings; (3) Defendants Crouse and Pratt failed to preserve the video recordings; and (4) the jury can consider these facts during their deliberation

The Court also finds that Baker is entitled to attorneys' fees for successfully bringing the Motion. The Court here has discretion to award fees when doing so is a "measure no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The Court finds that an award of fees appropriate because the time counsel spent raising this issue was essential to obtaining the above-outlined remedy aimed at curing the prejudice caused by the missing video evidence. See Meta Platforms, Inc. v. BrandTotal Ltd., 605 F. Supp. 3d 1218, 1241 (N.D. Cal. 2022) ("An

1   award of attorneys' fees for bringing a sanctions motion is an appropriate remedy for spoliation

2   under Rule 37(e)(1) as 'measures no greater than necessary to cure the prejudice,' even where a

3   party fails to show bad faith under Rule 37(e)(2).") But because Baker's counsel has not

4   submitted evidence as to what amount of time was reasonably spent in bringing the motion or her

5   reasonable hourly rate, the Court WITHHOLDS RULING on the amount to be awarded. Instead,

6   the Court ORDERS Baker's counsel to submit a fee request within 7 days of entry of this Order,

7   which shall not exceed 2,100 words. The fee request should be limited to establishing the

8   number of hours reasonably expended, the rate requested, and the reasonableness of the rate

9   requested. Defendants shall be permitted a response of 2,100 words due within 7 days of Baker's

10  submission. No reply shall be filed.

11         Lastly, the Court does note that Defense counsel's approach to initiating a litigation hold

12  in this case was woefully inadequate. Counsel waited seven months after his appearance to issue

13  a litigation hold to his clients. While this did not cause the loss of the videos, it suggests a lack of

14  seriousness in representing his client's and the State's interest. While counsel could find no voice

15  to explain his failure, the Court fears that his inattention stems from his belief that "[t]his

16  litigation is [a] small matter about alleged First Amendment violations." (Kamjula Decl. Ex. 14

17  at 17 (Dkt. No. 259-14.) As Justice O'Connor so artfully explained, "[t]here are no de minimis

18  violations of the Constitution—no constitutional harms so slight that the courts are obliged to

19  ignore them." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 36–37 (2004) (O'Connor, J.

20  concurring), abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118

21  (2014). Even if counsel believes that Baker's claims lack merit, he must take his duties to

22  conduct discovery and trial in a serious manner that provides complete justice to the rights Baker

23  seeks to vindicate and to the interests of his clients.

24

1  **C.    Surreply**

2      Defendants have filed a Surreply asking the Court to strike certain new arguments made

3  by Baker about other discovery abuses. The Court agrees with Defendants that the argument is

4  not timely and ultimately not relevant. The STRIKES the argument in the reply and supporting

5  materials.

6  **CONCLUSION**

7      The Court finds that sanctions are appropriate given Defendant Harris', Crouse's, and

8  Pratt's failure to preserve video evidence of two incidents at issue. This evidence is highly

9  relevant to Baker's claims and these Defendants were on sufficient notice that they should have

10  preserved it. Baker faces acute prejudice from the lack of evidence. In order to remedy that

11  prejudice, the Court will instruct the jury that the evidence existed, these Defendants should have

12  saved the evidence, and that the jury can consider the spoliated evidence in their deliberations.

13  The Court also AWARDS attorneys' fees to Baker's counsel for bringing this Motion, in an

14  amount to be determined after Baker submits his fee request and Defendants file their response,

15  as outlined above. This relief matches the injury identified and abides by the dictates of Rule

16  37(e)(1). A greater sanction here is not merited. On these grounds the Court GRANTS the

17  Motion.

18      The clerk is ordered to provide copies of this order to all counsel.

19      Dated June 9, 2025.

20

21      Marsha J. Pechman
        United States Senior District Judge

22

23

24